**Anne GEISLER, Plaintiff-Appellant,**

v.

**Frank FOLSOM, JR., personally and in his official capacity; Dwight Kessel, William C. Tallent, in their official capacity; County of Knox, Defendants-Appellees.**

No. 82–5785.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 15, 1984.

Decided June 1, 1984.

Order on Grant of Rehearing
July 3, 1984.

Geoffrey P. Emery, Assistant Law Director, Knox County (argued), Knoxville, Tenn., for defendants-appellees.

Dorothy B. Stulberg (argued), Oak Ridge, Tenn., for plaintiff-appellant.

Before LIVELY, Chief Judge, WELLFORD, Circuit Judge, and BROWN, Senior Circuit Judge.

LIVELY, Chief Judge.

This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. (1976), in which the plaintiff charged that she was subjected to discrimination in employment solely because she is a woman. Following a two day bench trial the district court filed a memorandum opinion finding that plaintiff failed to prove unlawful discrimination in wages and working conditions or in promotions and work assignments. The court also found that the defendants had not retaliated against the plaintiff for filing a complaint with the Equal Employment Opportunity Commission (EEOC), that the pregnancy leave policy of the defendants complied with federal and state requirements and that plaintiff

was not constructively discharged. Judgment was entered for all defendants and this appeal followed.

## I.

### A.

The plaintiff was employed as an "Engineer I" in the Knox County, Tennessee Department of Air Pollution Control (the Department) from January, 1976 until she resigned in May, 1981. During most of the time of plaintiff's employment there were three positions in the Department designated "Engineer." Mark Mitckes, who had bachelor's and master's degrees in chemical engineering, had the title of Engineer II. The plaintiff had the title Engineer I and Richard West was designated "Engineering Aide." Ms. Geisler has a bachelor's degree in environmental health and had taken graduate courses in environmental engineering. She did not have an engineering degree. West had no collegiate degree, but had long experience in the Department as a pollution inspector. During the time of plaintiff's employment Mitckes was the highest paid person with an "Engineer" title, the plaintiff was next highest paid and West was the lowest paid. For a six-month period West had additional earnings from a contract with the Environmental Protection Agency (EPA) which put his total income above that of the plaintiff. Mitckes and Ms. Geisler dealt with "major sources" of pollution in the county while West was involved primarily in field monitoring. The duties of Mitckes and Ms. Geisler required frequent contact with industry personnel and higher technical qualifications than the work which West performed.

The organization chart of the Department called for a Director and an Assistant Director. The Department was without a permanent Director during much of Ms. Geisler's tenure as an employee. From August, 1979 until October, 1980 Frank Folsom was Acting Director. Dwight Kessel served as Acting Director from December, 1980 until April, 1981. James Lovett

was chosen as Director to succeed Kessel. Under the controlling regulations he was required to serve as Acting Director for a period before formally assuming the position of Director. He was Acting Director when the plaintiff resigned by a letter dated May 15, 1981, effective May 29th.

### B.

It is clear from the record that Frank Folsom dealt poorly with professionally trained women employees. Ms. Geisler testified that Folsom refused to deal directly with the women on the professional staff, made demeaning remarks to them and generally made their life at work uncomfortable. She was supported by the testimony of two female environmentalists who worked for the Department. Both testified that the atmosphere changed dramatically for the worse when Folsom succeeded the previous Director, John McDowell. In addition Mark Mitckes testified that in his opinion women were not given equal opportunities with men under Folsom. While admitting that he and Ms. Geisler did not get along well, Folsom denied that he ever discriminated against women.

On July 10, 1980 the plaintiff filed a charge of discrimination with the EEOC. In the charge she alleged that Richard West had received a salary increase which raised his earnings above hers, that an office assigned to her in August, 1979 was reassigned to West in January, 1980, that new furniture which had been assigned to her office was reassigned to Mark Mitckes, that the "line of communication" between her and Folsom had been broken, that rules and procedures relating to vacation time for male and female employees were not always the same and that major responsibilities had been taken away from the plaintiff and assigned to West.

### C.

Following her resignation and receipt of a right to sue letter from the EEOC the plaintiff filed this action. In addition to the matters recited in her charge she alleged in the complaint that the defendants had re-taliated against her for filing the charge and that the maternity leave policy of the Department was illegal. At trial she claimed she had been constructively discharged.

To support the claim of retaliation the plaintiff testified that conditions were worse for her and other women in the office after she filed the charge. Further, the day the Department received notice of the charge the three professional women were called to a meeting by Mitckes and told that they were to deal with him rather than Folsom. Mitckes said that Folsom did not know how to deal with these employees.

In support of her claim of constructive discharge the plaintiff testified that the new Director, Lovett, told her, "There is no opportunity for advancement for you here." She said she resigned at that point, because she had been told to get out and had no option. Lovett testified that he never told Ms. Geisler that she had no future in the Department. He said he had not had an opportunity to evaluate the people in the Department when the plaintiff resigned. He told a number of employees, including the plaintiff, that the County was feeling budgetary pressures and that there might be reductions. In fact, the County was not required to operate an air pollution monitoring and control entity and there was a possibility that the Department could be abolished. Lovett also testified that some time after Ms. Geisler resigned he reorganized the Department, changed titles and eliminated the position of Assistant Director.

Contrary to the plaintiff's testimony, Lovett said he did not give West either a promotion or a salary increase after Ms. Geisler resigned; he merely changed West's title and put him in charge of the section he had previously headed. Before resigning the plaintiff had applied for the positions of Director, Assistant Director and Engineer II. The positions of Assistant Director and Engineer II were vacant when Ms. Geisler resigned. After the position of Assistant Director was abolished,

Lovett appointed a Quality Assurance Co-ordinator who also functioned as Assistant Director. The man appointed had no engineering degree, but possessed extensive administrative experience.

## II.

### A.

The district court made specific findings with respect to plaintiff's claims as follows:

(1) The payroll records showed that the plaintiff was paid more than West during the entire period of her employment. The extra pay which West received for six months under the EPA contract was for work outside his regular employment.

(2) The three offices assigned to the engineering personnel were substantially the same and the plaintiff took Mitckes' office when he left. The plaintiff had access to a conference room along with other employees and was never denied access to individuals or meetings.

(3) Uniform office hours and time card requirements were instituted by Kessel and were applied uniformly and were non-discriminatory in nature.

(4) The maternity leave policy of Knox County complied with all state and federal regulations. The plaintiff used sick and annual leave for her pregnancy-related absence in September, 1980 and was compensated for her time off except for 4½ days of claimed compensatory time which was denied pursuant to a neutral policy that was uniformly applied.

(5) When the plaintiff voluntarily resigned she indicated to Lovett that she had at least one other job offer in her field. After evaluating the remaining staff Lovett assigned West the title of Enforcement Coordinator without an increase in salary.

(6) The unfavorable conditions which existed during Frank Folsom's tenure did not exist after his departure. The evidence indicated that conditions improved and that plaintiff had her own office and substantial responsibilities when she resigned. Condi-

tions were not so intolerable that plaintiff's resignation amounted to a constructive discharge.

(7) Plaintiff did not make out a prima facie case of disparate treatment in failure to promote her to Director, Assistant Director or Engineer II. Both the Director and Engineer II positions required engineering degrees at the time plaintiff applied, and she did not have the qualifications for either. "Even if she was qualified, we find that plaintiff failed to show that the County's decision to hire an engineer as Director was pretext for discrimination."

The Engineer II position was eliminated in the restructuring and plaintiff submitted her resignation before the Assistant Director position was filled and the staff restructured. Thus, plaintiff withdrew her name from consideration before she was denied promotion to Assistant Director or Engineer II.

(8) Plaintiff did not prove that the decision to hire a man as Quality Assurance Coordinator was a pretextual move to cover a discriminatory act against women.

(9) Plaintiff failed to show any adverse employment action in response to her EEOC charge or any other protected activity. While additional tension arose after others became aware of Ms. Geisler's charge, such "predictable tension" is not "the type of adverse employment action prohibited by Title VII's retaliation clause."

### B.

Section 703(a) of the Act, 42 U.S.C. § 2000e–2(a) makes it unlawful for an employer to discriminate against an employee because of the employee's sex, and section 704(a), 42 U.S.C. § 2000e–3(a) makes it an unlawful employment practice to discriminate against an employee for filing a charge under Title VII.

■■■ A decision by a district court on the issue of discrimination under Title VII is subject to review under the clearly erroneous standard of Rule 52(a), Fed.R.Civ.P. *Pullman-Standard v. Swint,* 456 U.S. 273,

102 S.Ct. 1781, 72 L.Ed.2d 66 (1982); *Jacobs v. Martin Sweets Co., Inc.*, 550 F.2d 364, 369 (6th Cir.), *cert. denied*, 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed.2d 227 (1977); *Heard v. Mueller Co.*, 464 F.2d 190, 193 (6th Cir.1972). In *Pullman-Standard v. Swint* the Supreme Court made it clear that Rule 52(a) makes no distinction between so-called "ultimate" and "subsidiary" facts. A reviewing court is bound by all findings of fact in a case heard by a district court without a jury, or with an advisory jury, unless they are clearly erroneous. 456 U.S. at 287, 102 S.Ct. at 1789.

■ The plaintiff recognizes this standard of review and argues that each of the district court's findings is clearly erroneous. She then seeks to buttress this argument with references to her own proof, as if it were uncontradicted. In fact, plaintiff's proof was contradicted in every material respect. If the findings of the district court are supported by probative evidence they must be upheld and its judgment affirmed unless it committed error in the application of controlling legal principles to the facts.

■ (1) It is clear that every complaint but that of constructive discharge relates to the period when Frank Folsom was Acting Director. The evidence reveals a deplorable attitude by Folsom toward women. However plaintiff failed to establish any adverse impact on her employment other than bad relations between her and Folsom. The finding that plaintiff was paid more than West is not clearly erroneous. She does not claim that she was constructively discharged during Folsom's tenure. The district court found no unequal treatment in office and furniture assignments, and there was evidence to support that finding, including Lovett's testimony that Ms. Geisler agreed to the exchange of desks. These findings are not clearly erroneous.

(2) We reach the same conclusion with respect to the claims that Ms. Geisler was deprived of the opportunity to work on two projects because Folsom did not follow through with applications for outside grants. Explanations were given by the defendants for their decision not to proceed with the projects. These explanations were related to budgetary considerations and the plaintiff did not show that they were pretextual.

(3) Though we do not discuss them in detail we have considered each of plaintiff's other claims related to conditions of employment. We conclude that the findings of the district court are supported by probative evidence and are not clearly erroneous.

(4) Though plaintiff charged that the pregnancy policy of her employer violated the requirements of law, her proof appears to concern the failure to receive 4½ days' pay for compensatory time. There was positive testimony that she was paid during her maternity leave from accumulated sick leave and annual leave. The district court found that "comp time" had been eliminated in the Department pursuant to a policy change that did not discriminate against women. The evidence on this issue is not clear. Nevertheless, the finding that the pregnancy policy was in compliance with requirements of the law when plaintiff took maternity leave is not clearly erroneous. If the district court was in error, as plaintiff claims, in its treatment of the compensatory time policy of the County, such error was harmless as not affecting substantial rights of the parties. See 28 U.S.C. § 2111 (1982); Rule 61, Fed.R.Civ.P.

(5) The evidence upon which the plaintiff based her claim of retaliation was minimal. The fact that Folsom recognized his inability to deal with three women employees and directed them to go through Mitckes is not such evidence of retaliation as to make the district court's finding clearly erroneous. On the organization chart Mitckes was shown as manager of engineering and enforcement and listed above the plaintiff. Since Mitckes was the only professional engineer on the staff it was not illogical to require other persons performing engineering-related functions to report through him.

The very general claim that conditions became worse in the Department after the charge was filed was not supported by any specific testimony. We agree with the district judge that a general increase of tension in the workplace would be expected to follow revelation that a claim of discrimination in employment had been filed. However, evidence of such an increase should be considered, and any discrete act or course of conduct which could be construed as retaliation must be examined carefully. After such examination we conclude that the finding that no "adverse employment action" resulted from the filing of the EEOC charge is not clearly erroneous, particularly in view of the contrary evidence of a secretary, Amy Benson, and of Folsom.

(6) The finding that Ms. Geisler was not constructively discharged is not clearly erroneous. If she had resigned during Folsom's tenure a different answer might be required. However, she admitted on cross-examination that most of the alleged discriminatory practices took place under Folsom. Both of her supporting witnesses who were co-workers testified that conditions improved dramatically after Folsom left. Yet, plaintiff did not submit her resignation until several months after Folsom's departure. And it was submitted to a Director whom one of her co-worker witnesses described as "super" compared to Folsom and against whom the other such witness testified she had no complaint. It is obvious that conditions had improved substantially with Lovett's arrival.

The only reason given by plaintiff for her resignation was the claim that Lovett told her she had no future in the Department. Lovett flatly denied telling her that and testified that he had not had an opportunity to evaluate plaintiff at the time of her resignation which came one month after he took over as Director. A claim of constructive discharge must be decided on the facts of the particular case. This court has adopted the rule enunciated in *Bourque v. Powell Electric Mfg.*, 617 F.2d 61, 65 (5th Cir.1980), that "a finding of constructive discharge requires the determination that 'working conditions would have been so

difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Held v. Gulf Oil Co.*, 684 F.2d 427, 432 (6th Cir.1982); *accord, Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1256 (8th Cir.1981). Proof of discrimination alone is not a sufficient predicate for a finding of constructive discharge; there must be other "aggravating factors." *Clark v. Marsh*, 665 F.2d 1168, 1173–74 (D.C.Cir.1981).

Applying these principles to the facts found by the district court, we conclude that the court did not err in holding that Ms. Geisler was not constructively discharged when she resigned on May 15, 1981.

(7) On December 12, 1980 the plaintiff applied for the vacant position of Engineer II. Ms. Geisler received no response to her application and was never interviewed. On December 19, 1980 Knox County published a notice of job openings and advertised a vacancy in the position of Air Pollution Control Engineer II. The educational requirement in the notice of job opening and in the advertisements was a degree in engineering. The district court found that this requirement existed when plaintiff applied for the job. This finding is clearly erroneous. The job specifications for Engineer II as of January 1, 1974 prescribed the qualifications for the position as follows:

### QUALIFICATIONS

Any combination of training and experience *equivalent to:*

Graduation from an accredited 4 year college or university with a degree in engineering.

Three years of progressively responsible experience in an air pollution control program or related field.

(Emphasis added). There is no evidence that the educational requirement was changed between January 1, 1974 and December 19, 1980. John McDowell who was Director from April, 1975 through August, 1979 testified that there was no require-

ment that the Engineer II position be held by a person with an engineering degree during his time as Director. It is uncontradicted that Ms. Geisler had performed the duties of Engineer II after Mitckes left the Department and this at least creates the inference that she had training and experience "equivalent to" an engineering degree. *Grano v. Department of Development of Columbus,* 637 F.2d 1073, 1081 n. 7 (6th Cir.1980).

Ms. Geisler also applied for the positions of Director and Assistant Director. She admitted on cross-examination that she was not a serious applicant for the Director position since she did not have an engineering degree. She also admitted that Kessel told her the position of Assistant Director would not be filled until the new Director was chosen. She resigned before the new Director completed his reorganization.

We agree with the district court that the plaintiff did not make a prima facie case of discrimination in the failure to promote her to Director or Assistant Director. However, we disagree with respect to Engineer II. Ms. Geisler applied for a vacant position for which she was qualified. One week later the qualifications for the position were changed, she says, for the purpose of excluding her. She was never contacted or interviewed for the position and she was not advised that it was being kept open until a Director was appointed. She was effectively rejected for the position and it remained open until her resignation. The titles of Engineer I and II were abolished in the reorganization, but there was no proof that the duties formerly carried out by Mitckes as Engineer II were eliminated. We believe the plaintiff established a prima facie case of failure to promote to Engineer II and that a remand for further proceedings on this issue is required. See *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

The plaintiff did not seek reinstatement in her complaint. Thus, if it is determined that the defendants did discriminate in failing to promote her to Engineer II her remedy is limited to back pay representing the difference between the salaries of Engineer I and Engineer II from December 12, 1980 through May 19, 1981.

**C.**

Plaintiff also complains about evidentiary rulings which she claims unduly restricted the proof she was permitted to offer. After hearing some evidence about the assignment of office space the district judge told plaintiff's counsel to move on to something more important. Nevertheless, the judge covered this matter in his memorandum and clearly considered the testimony which he heard. He had the right to refuse cumulative evidence, and that appears to be what he did. The district judge also stated that testimony about externally funded programs where plaintiff worked on proposals and then Folsom failed to follow through with submissions was "irrelevant to the case." Though he received some testimony on these matters, the judge stated, "these little disagreements in the office are not controlling."

 The trial judge has, and must have, broad discretion in the conduct of a trial. Rulings on the relevancy and materiality of evidence may not be disturbed on appeal in the absence of a showing of clear abuse of discretion. *Page v. Barko Hydraulics,* 673 F.2d 134, 140 (5th Cir.1982). We find no such abuse here. The plaintiff was permitted to introduce some evidence on each of her claims. Though the comments of Judge Taylor exhibited some impatience with the pace of the trial, it is clear that plaintiff was permitted to develop her case. The thoroughness of its memorandum opinion belies any claim that the district court failed to consider all of plaintiff's claims.

**CONCLUSION**

The findings of the district court are not clearly erroneous except with respect to the qualifications for the position of Engineer II. The judgment of the district court

is vacated and the cause is remanded for further proceedings, consistent with this opinion, on the claim of plaintiff that she was denied an opportunity for promotion to Engineer II because she is a woman.

The parties will pay their own costs on this appeal. However, this order on costs will not prevent recovery of attorney fees by plaintiff if she prevails on the remanded issue.

### ORDER

The plaintiff has filed a petition for rehearing taking issue with the statement on page 997 of the opinion heretofore circulated, "The plaintiff did not seek reinstatement in her complaint." In the petition the plaintiff points out that a Pretrial Order was entered in this case by the district court which states that plaintiff claims she is entitled to "employment in a position commensurate with her training and abilities ...." Plaintiff asks us to change the opinion to read "The plaintiff sought reinstatement."

The petition for rehearing is granted. Though the plaintiff did not seek reinstatement in her complaint, it appears that she did seek reinstatement at some point during the district court proceedings and that this was memorialized in the Pretrial Order.

The statement referred to on page 997 of the opinion will read as follows: "The plaintiff sought reinstatement. If it is determined on remand that the defendants did discriminate in failing to promote her to Engineer II her remedy will include reinstatement to a position commensurate with her training and abilities plus back pay representing the difference between the salaries of Engineer I and Engineer II."