**Devosia WILLIAMS, Plaintiff-Appellee,**

v.

**CATERPILLAR TRACTOR COMPANY, Defendant-Appellant.**

**No. 84-5492.**

United States Court of Appeals, Sixth Circuit.

Argued Jan. 9, 1985.

Decided Aug. 9, 1985.

**48**

Charles A. Sevier, Wilson, McRae, Ivy, Sevier, McTyier and Strain, Memphis, Tenn., Gerald D. Skoning, argued, J. Stephen Poor, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant-appellant.

Dan M. Norwood, argued, Deborah P. Ford, Memphis, Tenn., for plaintiff-appellee.

Before JONES and KRUPANSKY, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

Caterpillar Tractor Company (Caterpillar) appeals from a denial of its motion for judgment notwithstanding the verdict in a civil action alleging a violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634 (1982). We affirm in part and reverse in part.

**I**

Caterpillar purchased a plant from General Motors Corporation (G.M.). As a condition of the sale, Caterpillar agreed to retain certain G.M. employees. Consequently, Devosia Williams, a forty-eight-year-old G.M. security officer, was hired by Caterpillar to fill the position of "weekly disability benefits clerk."

As a benefits clerk, Williams had to keep confidential information and to be aware of Caterpillar's disability policies and procedures. Throughout her five and one-half years, Williams received above-average ratings from Gerald Fonner, Caterpillar's Personnel Director. Nevertheless, Fonner concluded that Williams neither appreciated the sensitive information placed in her confidence nor understood Caterpillar's disability policies and procedures. Fonner based his conclusion upon three incidents. First, employees complained that Williams revealed confidential information. Second, Fonner charged that Williams failed to conduct an appropriate investigation into the eligibility status of an employee's dependent. Third, he charged that an article prepared by Williams contained erroneous information.

Based upon those allegations, Fonner and several managers decided to demote Williams. Consequently, Fonner told Williams that she would be demoted from her class ten job as a benefits clerk to a class two job as a mail clerk. Williams, however, had not received any written warnings or reprimands prior to demotion. Moreover, Caterpillar's demotion procedure

for office personnel required placement in the highest salary level of the next available position.

Rather than accepting the demotion, Williams claimed a physical inability to handle the duties of a mail clerk and resigned. Caterpillar replaced Williams with a thirty-one-year-old female, twenty-one years her junior, who was a class eight personnel clerk. Both Williams and her replacement had been cross-trained for each other's positions.

Subsequently, Williams filed a charge with the Equal Employment Opportunity Commission (EEOC) against Caterpillar and alleged age discrimination in violation of the ADEA. After waiting the required sixty days, Williams filed a complaint in the district court in which she charged Caterpillar with willful and constructive discharge. The jury returned a verdict in her favor. The district court entered judgment for Williams for a stipulated amount of $52,484.74, liquidated damages of $52,-484.74, attorney's fees of $17,819.40, and expenses of $527.77. Caterpillar filed a motion for judgment notwithstanding the verdict or for a new trial and contended that there was no evidence of either constructive discharge or age discrimination. After the district court denied the motion, we stayed execution of the judgment pending our determination of Caterpillar's appeal.

## II

Caterpillar requests that this Court set aside the jury verdict. The verdict was based upon three special interrogatories on which the jury found that Williams had been constructively discharged, that age was a determining factor in her discharge, and that Caterpillar's age discrimination was "willful." In reviewing the district court's denial of the motion for judgment notwithstanding the verdict, we must view the evidence in the light most favorable to Williams. In other words, we must give Williams the benefit of all reasonable inferences derived from the evidence. Only if we are then of the opinion that reasonable minds could only have come to a decision contrary to that of the jury will we reverse the denial of judgment notwithstanding the verdict. *Hill v. Spiegel Inc.*, 708 F.2d 233, 237 (6th Cir.1983).

## III

This Court has articulated a formula through which we may determine whether a plaintiff has established a prima facie case of age discrimination. *See Blackwell v. Sun Electric Corp.*, 696 F.2d 1176, 1180 n. 4 (6th Cir.1983). As applied to the instant case Williams had to establish: (1) membership in the protected class; (2) qualification for the position; (3) replacement by a younger worker; and (4) discharge. Williams was a fifty-two-year-old female who had performed well over the years and who was replaced by a thirty-one-year-old female; therefore, we conclude that she satisfied the first three tests of our formula. This leads us to consider whether she was constructively discharged.

"[A] finding of constructive discharge requires the determination that 'working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Geisler v. Folsom*, 735 F.2d 991, 996 (6th Cir.1984) (quoting *Held v. Gulf Oil Co.*, 684 F.2d 427, 432 (6th Cir.1982)); *see also Jacobs v. Martin Sweets Co.*, 550 F.2d 364, 369 (6th Cir.), *cert. denied*, 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed.2d 227 (1977). Whether Williams was constructively discharged depends upon whether a reasonable person *in Williams' shoes* would have felt compelled to resign upon a demotion from the class ten job of disability benefits clerk to the class two job of mail clerk. *See* 735 F.2d at 996.

The record did not demonstrate that as benefits clerk, Williams was required to engage in much physical exertion. Two mail clerks testified that a mail clerk rides a three-wheeled cycle to deliver mail three times daily throughout the approximately twenty-eight acre plant. They also testified that a mail clerk lifts packages or boxes that weigh between fifty to eighty

pounds. In comparing their descriptions, the jury could have reasonably inferred that Williams would have had to use more physical exertion as a mail clerk than she had used as a benefits clerk.

■ On appeal, Williams contends that she was not physically capable of the amount of exertion necessary to be a mail clerk and that her demotion amounted to a constructive discharge. Caterpillar contends that a reasonable person would have accepted the demotion because a maintenance technician accepted a similar demotion and because a pregnant female formerly held that position. As a result, Caterpillar suggests that Williams was unreasonable. Reasonableness, however, is measured only by the particular facts of the instant case and from the perspective of a *reasonable person in the position that Williams was in at the time of her discharge. Geisler*, 735 F.2d at 996. A jury could have reasonably concluded that Williams was constructively discharged by Caterpillar.

Thus Williams established the fourth test of our formula, thereby presenting a prima facie case. Upon that presentation, the burden of production shifted to Caterpillar to articulate a legitimate, nondiscriminatory reason for Williams' demotion to the class two position of mail clerk. *See Blackwell*, 696 F.2d at 1180. Caterpillar claimed that it demoted Williams because she revealed confidential information, failed to conduct an investigation, and erroneously prepared an article. This articulation was sufficient to shift the burden of production back to Williams to prove that Caterpillar's rationale was pretextual.

Our careful review of the record convinces us that there is evidence from which the jury could have inferred that Williams proved pretext. For example, although there was evidence suggesting that Williams revealed confidential information, Williams previously cautioned Fonner that the position of her desk allowed others to overhear confidential disclosures. Although Fonner testified that Williams did not investigate an employee's claim, he ad-

mitted that Williams alerted him that an investigation was necessary. Although Fonner testified that Williams had incorrectly prepared an article, he admitted that he had destroyed the allegedly erroneous article and that Williams had correctly prepared an article previously. Moreover, Williams had not received any warnings or reprimands.

■ Although there was evidence to support both Williams and Caterpillar, we must view that evidence in a light most favorable to Williams and give her the benefit of all inferences. Recognizing that credibility determinations are within the province of the jury, we conclude that the jury could have reasonably decided that Williams rebutted Caterpillar's articulated rationale and that Williams proved that age was a "determining factor" in her constructive discharge. Thus, Caterpillar's actions violated the ADEA.

**IV**

■ The jury also found that Caterpillar's violation was "willful" and that Williams was entitled to liquidated damages. In light of *Trans World Airlines, Inc. v. Thurston*, —— U.S. ——, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), we reverse the award of liquidated damages. In *Thurston*, the Supreme Court stated that a violation is "willful" if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Id.*, 105 S.Ct. at 625 (quoting *Airline Pilots Ass'n v. Trans World Airlines*, 713 F.2d 940, 956 (2d Cir.1983)). The Court held that mere knowledge of potential applicability of the ADEA was insufficient to establish willfulness. *Id.* Caterpillar contends that it did not consciously base its decision on Williams' age. Williams contends that "reckless disregard" includes Caterpillar's awareness of the age discrimination laws. *Thurston* however, renders Williams' contention invalid. Under *Thurston*, Williams must establish Caterpillar's reckless disregard of the ADEA. Here, there are no findings of Caterpillar's reckless disregard. Hence, we conclude

that Caterpillar's violation was not "willful."

Accordingly, we AFFIRM the district court's judgment that Caterpillar violated the ADEA. We also AFFIRM the awards for damages, legal fees, and expenses. We REVERSE, however, the award of liquidated damages.

KRUPANSKY, Circuit Judge, concurring specially.

I concur in the result reached by the majority but I write separately to briefly discuss the extent of the proof of constructive discharge in this case and to emphasize the proper allocation and nature of burdens of proof and production in age discrimination cases.

The majority correctly concludes that the jury could have reasonably determined that Caterpillar constructively discharged Williams. As the majority explains, a finding of constructive discharge requires a determination that "working conditions could have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *See Geisler v. Folsom*, 735 F.2d 991, 996 (6th Cir.1984). In citing evidence which supports the jury's finding of constructive discharge, the majority emphasizes the increased amount of physical exertion which would have been required of Williams had she accepted the mail delivery position. More persuasive support for a determination of constructive discharge lies in the fact that Williams' demotion from her position as a disability benefits clerk to a mail clerk entailed a significant change in job duties, a reduction in classification from "grade 10" to "grade 2" and a corresponding reduction in salary which Williams understood to be "the lowest salary of any of the office employees."

With regard to the nature of proof sufficient to show age discrimination, I wish to reiterate the basic allocation of burdens and order of presentation of proof articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and expounded upon in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1084, 67 L.Ed.2d 207 (1981).

By carrying the burden of establishing a prima facie case of disparate treatment, the plaintiff creates a mandatory rebuttable presumption that the employer unlawfully discriminated against the employee. *Burdine*, 450 U.S. at 254, and n. 7, 101 S.Ct. at 1094, and n. 7. Thereafter, the burden of production shifts to the defendant to "articulate some legitimate nondiscriminatory reason for the employee's rejection." 450 U.S. at 253, 101 S.Ct. at 1093. To succeed in carrying this burden of production, "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." 450 U.S. 253–54, 101 S.Ct. 1094 (citation and footnote omitted). If the defendant carries this burden of production, "the presumption raised by the prima facie case is rebutted,[1] and the factual inquiry proceeds to a new level of specificity." 450 U.S. at 256, 101 S.Ct. at 1095. Placing the burden of production on the defendant "serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demon-

---

1. In *Burdine*, the Supreme Court explained the effect of rebuttal of the presumption that had been raised by the prima facie case:

   In saying that the presumption drops from the case, we do not imply that the trier of fact no longer may consider evidence previously introduced by the plaintiff to establish a prima facie case. A satisfactory explanation by the defendant destroys the legally mandatory inference of discrimination arising from the plaintiff's initial evidence. Nonetheless, this evidence and inferences properly drawn therefrom may be considered by the trier of fact on the issue of whether the defendant's explanation is pretextual. Indeed, there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation.
   450 U.S. at 256 n. 10, 101 S.Ct. at 1095 n. 10.

strate pretext." *Burdine,* 450 U.S. at 255–56, 101 S.Ct. at 1095.

At all times, the plaintiff retains the burden of persuasion. After the employer sufficiently articulates a nondiscriminatory reason for its action, the plaintiff must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision:

> *This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. She may succeed in this* either directly by persuading the court that a discriminatory reason more likely motivated the employer or *indirectly by showing that the employer's proffered explanation is unworthy of credence.*

*Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095, (emphasis added) *citing McDonnell Douglas,* 411 U.S. at 804–05, 93 S.Ct. at 1825–26.

As the majority concludes, Williams carried her burden of establishing a prima facie case. Caterpillar then articulated a nondiscriminatory reason; it suggested that it demoted Williams for disclosing confidential information, for failing to conduct an investigation and for erroneously preparing an article. The presumption of discrimination raised by the prima facie case was, therefore, rebutted. Accordingly, at the third and final stage of trial, Williams could prevail only by carrying the merged burdens of demonstrating that the employer's proffered reason was not its true reason and that she has been the victim of intentional discrimination. *See Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. She could accomplish this ultimate burden "indirectly by showing that the employer's proffered reason is unworthy of credence." *See id.*

Williams produced evidence tending to show that Caterpillar's proffered reason was "unworthy of credence." *See id.* As the majority observes, Williams introduced evidence indicating that Fonner, her supervisor, was aware that confidential disclosures could be overheard by those situated in close proximity to Williams' desk; that

although Williams did not investigate a particular employee's claim, she had told Fonner that such an investigation should be performed; and that Fonner admitted that he had destroyed the allegedly erroneous article and conceded that Williams had satisfactorily prepared an article at another time.

Accordingly, the record contains sufficient evidence from which the jury could properly conclude that Williams successfully demonstrated that Caterpillar's proffered nondiscriminatory reasons for her constructive discharge were "unworthy of credence" and, accordingly, that she carried her "ultimate burden of persuading the court that she had been the victim of intentional discrimination." *See id.* The *"McDonnell Douglas* framework requires that a plaintiff prevail where at the third stage ... of trial [he or she] demonstrates that the legitimate, nondiscriminatory reason given by the employer is in fact not the true reason for the employment decision." *United States Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) (Blackmun, J., concurring).