818 F.2d 31
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jess TURNER, Plaintiff-Appellant,
v.
CITY OF LEBANON, et al., Defendants-Appellees.
 No. 86-3149.
 United States Court of Appeals, Sixth Circuit.
 May 14, 1987.
 
 On Appeal from the United States District Court for the Southern District of Ohio
 Before MARTIN and MILBURN, Circuit Judges, and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff-Appellant Jess Turner (plaintiff) appeals a judgment of the United States District Court for the Southern District of Ohio, which dismissed his complaint of, among other claims, age discrimination, violation of his right to procedural due process and intentionally tortious conduct in this employment case. The plaintiff now contends that the district court erred (1) by dismissing his due process claim and thereby not awarding compensatory damages where the defendants-appellees City of Lebanon, Ohio, et al. (City) admitted that he was suspended from his employment without prior notice or a Hearing and where the court had earlier directed a verdict favoring the plaintiff on this claim; (2) by refusing to instruct the jury on "constructive discharge"; and (3) by disallowing the admission of evidence that the City had more favorably treated its younger employees under circumstances similar to the plaintiff's. For the reasons discussed below, we affirm in part, reverse in part, and remand the procedural due process cause for an award of nominal damages and attorney fees.
 
 
 2
 Plaintiff, born September 27, 1935, worked for the City as an electrical lineman in its Municipal Division of Electricity. The plaintiff was thrice employed in this capacity, the final time, during which the present dispute arose, being from June of 1981 to December of 1984.
 
 
 3
 On November 3, 1984, the plaintiff suffered a job-related injury when a power line, on which he was working, exploded. The plaintiff later explained that the head of the City's Division of Electricity, Robert Newton, had ordered him to repair that line despite the known extraordinary risks. Throughout the rest of November, the plaintiff missed several days on the job, after having exhausted his sick day allowance and also after not having requested a leave of absence, even after Newton had twice suggested that he make such a request.
 
 
 4
 While the plaintiff was on the job on November 30, his riley wife smashed her car into a City truck in which the plaintiff was seated and demanded that he give her some money. Following the ensuing altercation, the plaintiff took off the rest of the work day, informing some co-workers of his plan to leave his work post, but not notifying his supervisor.
 
 
 5
 After the plaintiff skipped a few more work days and missed a scheduled repair call, Newton recommended to the City Manager, Timothy Hansley, that the plaintiff be suspended without pay for thirty days. Hansley agreed, but reduced the suspension period to fifteen days. In taking this disciplinary action, Hansley noted: (1) that the plaintiff was regularly missing workdays without requesting a leave of absence and with a zero balance in sick leave, (2) "disgraceful conduct" regarding the public fracas between the plaintiff and his wife, (3) the plaintiff's early departure from his work post without notifying his superiors and (4) failure to report for the call-out repair work--all in violation of the City's administrative rules.
 
 
 6
 On December 4, 1984, the plaintiff received a notice, by certified mail, that he had been suspended. The plaintiff had been afforded no prior warning notice or hearing concerning this disciplinary action.[1] Two days later, the plaintiff met with the City's personnel director, Judy Gilliland. While agreeing that the plaintiff was upset over his suspension, the parties disagree about whether he quit his job during this meeting. The plaintiff contends that he did not resign out of anger at this time or any other time. However, Gilliland testified that the plaintiff "pulled out his ID card, laid it on my desk, and said, 'I am fed up. I resign.' " Gilliland also explained that the plaintiff refused to sign a voluntary resignation form that she then prepared because first he would not agree with the reasons for his resignation which she suggested be noted on the form, and later he claimed that his attorney had advised against his signing any document.
 
 
 7
 Soon after, the plaintiff met with Hansley who considered the plaintiff as no longer employed with the City and who, according to Hansley, refused the plaintiff's alleged attempt to withdraw his resignation. Hansley explained that he refused to rehire the plaintiff because of the circumstances surrounding his resignation, the lack of recommendations from the plaintiff's supervisors (also because of the circumstances surrounding his resignation), his personal policy against rehiring people who had quit without notice, and plaintiff's comments that he was physically unable to work.
 
 
 8
 The plaintiff, on the other hand, has stated that during this meeting, he emphatically explained that he simply never resigned and wished to return to work.
 
 
 9
 With the original complaint filed in January of 1985, the plaintiff filed an amended complaint on March 28, 1985 against the City, Hansley and Newton",[2] alleging age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Sec. 621 et seq., and O.R.C. Sec. 4101.17, deprivation of his property and liberty interests in continued employment without due process in violation of Sec. 1983 and the fourteenth amendment, conspiracy for such deprivation as well as that of equal protection in violation of Secs. 1985 and 1986, first amendment violations, intentional and outrageous infliction of emotional distress, retaliatory discharge stemming from his filing of a Workers' Compensation claim in violation of O.R.C. Sec. 4123.90, wrongful discharge and intentional tort arising from his on-the-job injury.
 
 
 10
 In support of his age discrimination claim, the plaintiff noted that his supervisors called him "the old man," that Newton stated that the plaintiff seemed three years older than he actually was, that the plaintiff's duties were assigned to a younger, less qualified employee and that younger employees had received less harsh treatment after violating rules cited in his suspension.[3]
 
 
 11
 The district court, during a charge conference, directed a verdict in favor of the plaintiff on his due process claim, relying on Cleveland Board of Educ. v. Loudermill, 470 U.S. 532, 84 L.Ed.2d 494 (1985) in its determination that the plaintiff was entitled to some pre-suspension hearing.[4] However, the court refused to submit the accompanying claim of damages to the jury. On December 6, 1985, the jury, in its answers to special. interrogatories, found (1) that the plaintiff had resigned and was not discharged, (2) that age was not a determining factor in the City's decisions to suspend and later to refuse to rehire him, (3) that the City, through its agent Newton, did not know or believe that the on-the-job injury which the plaintiff suffered was a "substantially certain consequence" of the power line work that Newton had required the plaintiff to do, and (4) that the City, through both Hansley and Newton, had not intentionally inflicted emotional distress on the plaintiff.
 
 
 12
 On the same day, the court entered its judgment dismissing the complaint in accordance with the jury's verdict. On December 10, 1985, the court filed a memorandum, which explained that although the court "indicated that a verdict would be directed for the plaintiff on his issue of whether his suspensions violated his procedural due process right," his suspension could not have lasted more than three days before his resignation and thus the deprivation of his wages, if any, by the wrongful suspension for this short period "would probably have rendered the due process violation de minimis." The court then concluded that "as the plaintiff was not deprived of any wages under the particular circumstances involved here [namely, the plaintiff's inability to work and non-entitlement to sick pay), his three-day suspension was so minimal a deprivation of his property right in his continued employment as to not require protection under the due process clause," thereby justifying its dismissal of the entire cause.
 
 
 13
 * We believe that the district court correctly concluded that, in the absence of a pre-suspension hearing and notice, the manner in which the plaintiff was suspended violated his procedural due process rights under the fourteenth amendment by disregarding his protected property interest in continued employment.[5] Loudermill, 84 L.Ed.2d at 504. However, the plaintiff has simply failed to demonstrate any compensable injury resulting from the procedurally defective suspension. Because the plaintiff had exhausted his sick day allowance, had not sought a leave of absence and, according to his own admissions, was physically unable to work, he would have not been entitled to receive pay during the three-day period between his suspension and the end of his employment. Thus, the plaintiff cannot successfully claim any lost wages during this period since he would have not earned any such wages even if he had not been suspended.
 
 
 14
 Further, the plaintiff has offered no proof supporting an alleged reputational injury. Moreover, although the jury found that the City had inflicted emotional distress on the plaintiff, he should not recover for such distress under a Sec. 1983/due process claim since the suspension, despite the procedural defect, seems appropriate. As the Supreme Court explained in Carey v. Piphus, 435 U.S. 247, 55 L.Ed.2d 252, 264 (1978):[6].
 
 
 15
 [W]here a deprivation [of a protected interest] is justified but procedures are deficient, whatever distress a person feels may be attributable to the justified deprivation rather than to deficiencies in procedure.... [T]he injury caused by a justified deprivation, including distress, is not properly compensable under Sec. 1983... [A]lthough mental and emotional distress caused by the denial of procedural due process itself is compensable under e hold that i likelihood of such injury nor the difficulty of proving it is so great as to justify awarding compensatory damages without proof that such injury actually was caused.
 
 
 16
 (Emphasis added and footnotes omitted.)
 
 
 17
 In the present case, the plaintiff did, as the jury found, suffer distress, but there is no evidence that the anguish was specifically caused by the absence of a presuspension hearing or notice. Instead, the distress seems to stem from the disciplinary action itself. Without doubt, the plaintiff's four infractions of the City's administrative rules, the bases for which the plaintiff does not dispute, amply justify the suspension.
 
 
 18
 Nevertheless, we believe that the procedural defect in the suspension does merit the award of nominal damages and attorney fees to redress the due process deprivation and to protect the integrity of the procedural safeguards as announced in Loudermill. As the Supreme Court in Carey v. Piphus poignantly explained:
 
 
 19
 Even if [the employees'] suspensions were justified, and even if they did not suffer any other actual injury, the fact remains that they were deprived of their right to procedural due process... . Because the right to procedural due process is "absolute" in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed, we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury.
 
 
 20
 55 L.Ed.2d at 266-67 (citations and footnote omitted). See Memphis Community School District v. Stachura, 477 U.S. ---, 91 L.Ed.2d 249, 260 n .11 (1986) ("nominal damages, and not damages based on some undefinable 'value' of infringed rights, are the appropriate means of 'vindicating' rights whose deprivation has not caused actual, provable injury").
 
 II
 
 21
 The plaintiff also contends that the district court improperly refused to instruct the jury on constructive discharge--a concept requiring a determination that "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." Williams v. Caterpillar Tractor Co., 770 F.2d 47, 49 (6th Cir.1985), Quoting Geisler v. Folsom, 735 F.2d 991, 996 (6th Cir.1984). The district court refused the instruction by noting the plaintiff's argument that he had never resigned and, more specifically, the incompatibility of that argument with an assertion of constructive discharge which necessarily assumes that the employee resigned. Simply put, the plaintiff steadfastly maintained at trial that he never resigned. He never contended in the district court that he was constructively discharged, so the district court's refusal to instruct on this theory was appropriate.
 
 III
 
 22
 At trial, the district court excluded evidence that the plaintiff claimed would show how the City more favorably treated younger employees in filing work-related accident reports. More specifically, the plaintiff sought the introduction of accident reports that had been previously filed by the City for younger employees following longer lapses of time (than his) after their injuries occurred in criticizing the City's failure to file an accident report for his November 3rd mishap. The City suggested that this failure resulted from the plaintiff's own failure to report immediately his injuries to City officials.
 
 
 23
 The district court decided to exclude this evidence apparently because the filings had occurred during a previous City administration which did not include Newton or Hansley as City Manager. We conclude that the district court did not abuse its discretion in disallowing the evidence since Hansley and Newton had nothing to do with the filings of the old reports. Moreover, given the paucity of proof indicating that the City deliberately disfavored the plaintiff in suspending and refusing to rehire because of his age, we seriously doubt whether the jury's finding of no such discrimination would have been different even if the old reports had been admitted.
 
 
 24
 Therefore, the judgment of the district court is affirmed in part, reversed in part, and the procedural due process claim remanded for an award of nominal damages and attorney fees.
 
 
 
 [1]
 Hansley later testified that the City had never provided prior notice to its workers before suspending them
 
 
 [2]
 Plaintiff sued Hansley and Newton in both their individual and official capacities
 
 
 [3]
 The plaintiff conveniently overlooked the fact that he violated four administrative rules within a relatively short time and not merely one or two guidelines as did the other employees
 
 
 [4]
 In Loudermill, the Supreme Court held that the due process clause mandates that employer provide "Some kind of hearing" before discharging an employee whose constitutionally protected property interest in his employment is otherwise infringed. 84 L.Ed.2d at 504
 
 
 [5]
 The parties in the present case do not dispute the existence of this infringement
 
 
 [6]
 In Carey, two students were suspended from public school without first being given an adjudicatory hearing