Otis E. BERGERON

v.

CITY OF GOODLETTSVILLE.

No. 3–86–0404.

United States District Court, M.D. Tennessee, Nashville Division.

Aug. 9, 1988.

Jordan Stokes, III, Nashville, Tenn., for plaintiff.

Laura Chastain and Charles A. High, Jr., Nashville, Tenn., for defendant.

## ORDER

HIGGINS, District Judge.

In accordance with the memorandum contemporaneously filed, the Court finds in favor of the plaintiff, Otis E. Bergeron, and against the defendant, the City of Goodlettsville, with regard to plaintiff's age discrimination claim pursuant to the Age Discrimination In Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*

Accordingly, the plaintiff shall be reinstated to his position with full payment of back wages and restoration of fringe benefits he would have been entitled to had he not been wrongfully discharged. The defendant shall receive credit for all amounts the plaintiff has received in unemployment compensation benefits, as well as the amounts plaintiff has earned from other employment since his discharge.

If the parties are unable to agree on these matters, they shall have thirty (30) days from the date of entry of this order on the docket within which to so report to the Court, at which time this matter will be referred to the Magistrate to strike an accounting between the parties.

The Court declines to take jurisidiction over the plaintiff's asserted pendent state claim. Accordingly, the plaintiff's pendent state claim is dismissed without prejudice.

It is so ORDERED.

## MEMORANDUM

This is an action for an alleged violation of the Age Discrimination In Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* Also asserted is a pendent state claim for wrongful discharge.

Jurisdiction is based upon 29 U.S.C. § 626(c) and 28 U.S.C. § 1331(a) and is undisputed.

For the reasons stated in this memorandum, the Court finds in favor of the plaintiff with regard to his age discrimination claim.

## I.

The plaintiff, Otis E. Bergeron, was born February 11, 1922. He was employed by the defendant on April 8, 1980, at age 58, to fill the newly-created position of Sewer Inspector. He was discharged on May 11, 1984, at age 62. At the time of his termination, the plaintiff was not given any reason for his discharge, and nothing was said of an age related nature. Later, the defendant filed the prescribed separation notice with the Tennessee Department of Employment Security, stating the plaintiff was discharged "without cause." In response to an inquiry by the Equal Employment Opportunity Commission (EEOC), the defendant stated that the plaintiff "was discharged because the city manager did not desire his services any longer. He was an at will employee."

The defendant is a Tennessee municipal corporation organized pursuant to Tenn. Code Ann. § 6–18–101 et seq., with a City Manager–Commission type government. Under Tenn.Code Ann. § 6–21–108, the City Manager has the power to appoint and remove employees.

The plaintiff was employed on behalf of the defendant by Mr. Timothy Jay Myers,[1] City Manager. As previously stated, the plaintiff was engaged to fill the newly-created position of Sewer Inspector. There was no written contract of employment. The first six months was a probationary period, after which the plaintiff became a full-time permanent employee entitled to certain specified fringe benefits in addition to his salary in the approximate amount of $17,000 (as of the date of discharge). The fringe benefits included, among others, participation as a member of the Tennessee Consolidated Retirement System with vested rights after ten (10) years of membership service.

The plaintiff came to this job with extensive experience in utility construction since 1948. He had been employed by the City of Nashville for four (4) years in this type of work and since 1953 had been employed by various utility contractors as foreman on a great number of jobs.

The plaintiff's duties required him to inspect sewer lines being constructed and to ensure that the quality of materials used were in accordance with the contract specifications. He was told that the City had experienced problems with some contractors and that one company had been "blacklisted." The plaintiff was instructed to check the work of the contractors closely and to make daily reports to Mr. Bill Martin, Director of Public Works Department.[2] Therefore, he performed his duties by being on the construction sites daily.

In discharging his duties, the plaintiff reported any improper work to his superior, Mr. Martin, and would ask the contractor to cease work in the meantime. The plaintiff testified that he never told a contractor to do anything not called for in the specifications. During the course of his employment, the plaintiff was never told that his work was unsatisfactory, and he was not the subject of any disciplinary actions or reprimands. The plaintiff was recommended to the City for employment by its own outside consulting engineer, Mr. Sidney B. Smith, III. Mr. Smith testified that whenever he went to the job sites the plaintiff was doing his job and doing it properly.

Mrs. Theresa Gayle Racht served as the secretary to Mr. Martin, Director of the Department of Public Works. The plaintiff utilized her services and came to the office daily. She testified that the plaintiff attended to the City's business and worked

---

1. Mr. Myers was killed in an aircraft accident prior to trial. So far as the Court is advised, his deposition was not taken prior to trial.

2. Mr. Martin was not called to testify at trial, although he was still employed by the defendant as Director of Public Works Department and was the plaintiff's immediate supervisor.

every day. According to Mrs. Racht's testimony, which the Court credits, the plaintiff wanted the contractors to "go by the book" and follow the specifications. She stated that the plaintiff was a man who spoke his mind and stood behind what he believed to be the truth and was unwilling to "bend the rules." While she observed the plaintiff only in the office and not in the field or in meetings with contractors, she stated he was polite, although he teased her from time to time. She never observed any change in the plaintiff's personality. He was the same from "day one." However, she did see him on occasions in an agitated state when contractors were not meeting the specifications as he believed they should do. On the other hand, she never heard the plaintiff complain that he was right when his views were overridden by his superiors. Mrs. Racht opined that the plaintiff was fired because he was doing his job and failed to "cooperate" and go along with the contractors.

At the time the plaintiff was discharged, he was replaced by Mr. Gary Beadle who was approximately thirty-five (35) years of age. Mr. Beadle had been with the City about thirteen (13) years and was serving as a shop foreman before taking over the plaintiff's position. Mr. Beadle had some experience in the repair of sewer lines, but could not read blueprints and had no construction experience.

In its answer to the ADEA claim, the defendant alleged that the plaintiff was removed from his position for reasonable factors other than age. This defense is fleshed out in the pretrial order where the defendant, in its theory of the case, asserts the plaintiff was discharged because of his inability to get along with other persons with whom he worked. Specifically, the factor advanced in defense was "poor human relations." In response to the plaintiff's interrogatories, the defendant stated that the plaintiff's personality underwent a change in 1984, such that he became difficult and disagreeable and that the City Manager was required to mediate numerous disputes between the plaintiff and the contractors; and in various instances, the problems were caused by the plaintiff and were without substance. Finally, the defendant contended that discussions with the plaintiff only compounded the problem as he refused to change his behavior.

Mr. Ronald Riley, the Jones Brothers' foreman on the Jackson Road sewer project,[3] dealt with the plaintiff on a daily basis and a number of disagreements took place between them. One of the disputes related to the use and storage of explosives on the job. Another point of friction related to the failure of Jones Brothers to complete the job in a timely fashion under the contract. Mr. Riley had worked with the plaintiff when they were both employed by Baltz Brothers Construction Company. However, it seemed to Mr. Riley that the problems he encountered with the plaintiff on the Jackson Road project in Goodlettsville were of a different nature from those on previous projects. In Mr. Riley's view, the plaintiff wanted to run the job rather than just act in his capacity as the inspector.

Finally, because the City's consulting engineer, Mr. Smith, had advised Jones Brothers that liquidated damages under the contract would be imposed because of the delay in completing the job, a meeting took place, at the request of Jones Brothers, with the City Manager and members of the City Commission. As a result of the joint meeting, the City Commission decided not to impose liquidated damages. At trial, Mr. Smith testified that at the time of the meeting the job was not complete, but was functional; however, certain reclamation work had not been done. Mr. Riley attributed the cause of delay to difficulties they experienced in dealing with the plaintiff.

---

**3.** At trial, Mr. J. Howell Smith, a resident of Jackson Road in Goodlettsville, testified that in late July, 1982, his home was damaged by blasting work being performed by Jones Brothers Construction Company on the City's sewer project. He experienced a good bit of trouble getting in and out over the road in front of his home which led to "run-ins" when he complained to the contractor's employees. One of the employees threatened to "put him in the hospital."

However, at trial Mr. Eddie Reed, Vice President of Jones Brothers, admitted that it was Jones Brothers' fault that the project had run over the time requirements and not the result of any fault on the part of the plaintiff. He also testified that he complained to Mr. Martin (the plaintiff's superior) about the manner in which the plaintiff discharged his duties as inspector; however, Mr. Martin was not sympathetic and indicated he thought the plaintiff was doing his job, so Mr. Reed thought it best to back off.

Mr. Galbreath of Galbreath Bros. Plumbing Co., Goodlettsville, Tennessee, testified that his work was inspected by plaintiff. According to Mr. Galbreath, the plaintiff would read the rule book and was never satisfied with Galbreath's work which the plaintiff would "red tag." Finally, Mr. Galbreath quit doing work within the City of Goodlettsville. However, once the plaintiff was fired, Mr. Galbreath began doing work within the City and has not experienced any further trouble with inspections on his jobs.

Mr. Sam Hodges, III, attorney for the City of Goodlettsville testified that Mr. Myers consulted him about terminating the plaintiff. Mr. Hodges said that the decision was made by Mr. Myers in the best interest of the City. Mr. Hodges advised Mr. Myers to fill out the termination notice to reflect that the plaintiff was discharged "without cause" to avoid a confrontation with the plaintiff and permit him to collect unemployment compensation.

## II.

The ADEA prohibits discrimination in employment on the basis of age. 29 U.S.C. § 621. The Supreme Court in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) established guidelines for the burden of proof in gender discrimination cases under Title VII of the Civil Rights Act of 1964. This analysis of the allocation of burden of proof is also applicable in cases under the ADEA. *West v. Fred Wright Construction Company*, 756 F.2d 31, 33 (6th Cir.1985). The plaintiff must first establish a prima facie case of discrimination. Once the plaintiff makes out a prima facie case, thus raising a presumption of discrimination, the burden shifts to the defendant to articulated some legitimate nondiscriminatory reason for the employment decision. If the employer produces some legitimate nondiscriminatory reason, then the plaintiff must prove by a preponderance of the evidence that the articulated reason was a pretext for discrimination in employment. The plaintiff always retains the ultimate burden of proving discrimination. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093, 67 L.Ed.2d at 215.

In a Title VII case, the burden of proving a *prima facie* case may be met by satisfying the four-element test of *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The *McDonnell Douglas* test was formulated for a Title VII racially-discriminatory hiring suit, but has been widely modified to fit other discriminatory practices and employment decisions other than hiring. *See e.g., Williams v. Caterpillar Tractor Company*, 770 F.2d 47, 49 (6th Cir.1985).

In *Williams*, the Sixth Circuit approved a modification of the *McDonnell Douglas* test in an ADEA constructive discharge case. The plaintiff in *Williams* established a *prima facie* case when she showed, "(1) membership in the protected class; (2) qualification for the position; (3) replacement by a younger worker; and (4) discharge." *Id.* at 49. *See also, Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 69 (6th Cir.1982). The Sixth Circuit has held, though, that "the similarity between the ADEA and Title VII [does] not mandate rigid application of the *McDonnell Douglas* guidelines establishing a *prima facie* case in a Title VII discriminatory hiring suit, to a discriminatory discharge suit under the ADEA." *West v. Fred Wright Construction Company*, 756 F.2d at 33. The Sixth Circuit employs a flexible case-by-case analysis which adopts "those standards [of Title VII] which further the ADEA's distinct legislative purposes." *Id. See also, Blackwell v. Sun Electric Corp.*, 696 F.2d 1176, 1179 (6th Cir.1983); *Acker-*

*man v. Diamond Shamrock,* 670 F.2d 66, 70 (6th Cir.1982); *Sahadi v. Reynolds Chemical,* 636 F.2d 1116, 1117–19 (6th Cir. 1980). The Court finds that application of the *McDonnell Douglas* test as modified by the Sixth Circuit in *Williams* is appropriate in the case at bar.

### III.

■ The plaintiff has established a *prima facie* case of age discrimination. Mr. Bergeron is within the protected class, being 62 at the time of his termination. As noted above, he is qualified for his job. He was recommended for the position of Sewer Inspector by the City's outside consulting engineer and came to the job with substantial experience in supervising utility construction work. When Mr. Smith, the consulting engineer, observed him on the job, the plaintiff was doing his work in a proper fashion. When complaints about his performance were made by Mr. Reed, Vice President of Jones Brothers, to Mr. Martin (plaintiff's immediate superior), they were not received sympathetically. Mr. Martin indicated to Mr. Reed that he thought the plaintiff was doing his job. Mr. Reed backed off and apparently withdrew his complaints or took them elsewhere—perhaps to the City Manager. It is significant that Mr. Martin, although still employed by the City, was not called to testify about the complaints concerning the plaintiff's job performance, his ability to get along with the contractors or the reasons for the plaintiff's termination. It is reasonable to assume that as the plaintiff's immediate supervisor and head of the Department of Public Works he would have been in a position to provide an informed insight into the quality of the plaintiff's job performance. Surely, Mr. Myers, as City Manager, would have consulted Mr. Martin before firing one of Mr. Martin's subordinates. Curiously, the record reflects that Mr. Myers, whose lips are now sealed by death, consulted Mr. Hodges, the City's attorney, but nothing is heard from the defendant City about its failure to produce Mr. Martin.

It is admitted that the plaintiff was discharged and replaced by a younger person not in the protected class. In this regard, the plaintiff was replaced by Mr. Beadle, age 35, who had no experience in utility construction or supervision of such work, and could not read blueprints.

The plaintiff having established a *prima facie* case and thus raising a presumption of discrimination, the burden shifts to the defendant to articulate some *legitimate* nondiscriminatory reason for the employment decision. The defendant asserts that the "reasonable factors other than age" (29 U.S.C. § 623(f)) were "poor human relations," that is, plaintiff's inability to get along with other persons. In this case, the evidence reflects that the contractors complained about the plaintiff's job performance and his rigid adherence to contract specifications. Simply put, and boiled down, the evidence overwhelmingly demonstrates that the plaintiff held the contractor's feet to the fire. As Mrs. Racht[3] testified, the plaintiff was not one to bend the rules and he went "by the book" in following the specifications.

■ The burden rests upon the plaintiff to show that the articulated legitimate reason for his discharge is a pretext for age discrimination. This burden of proof is different from that in sex discrimination cases under Title VII since the plaintiff need not show that the alleged discrimination was intentional. The Sixth Circuit recognizes that a person is the victim of age discrimination in an employment decision when "one factor was his age and it in fact made a difference in determining whether he was to be retained or discharged." *Laugesen v. Anaconda Company,* 510 F.2d 307, 310 (6th Cir.1975). *See also, Sahadi v. Reynolds,* 636 F.2d 1116, 1117 (6th Cir.1980). ("[A]ge [does] not have to be the sole reason, but only a contributing factor in connection with the discharge.")

**3.** The Court notes that Mrs. Racht was no longer employed by the City of Goodlettsville when she testified at trial. The Court credits Mrs. Racht's testimony and believes she "told it as it was."

The Court also notes that Mrs. Racht was Mr. Martin's secretary and again notes that Mr. Martin did not testify, despite the fact that he was the plaintiff's supervisor.

■ On the evidence in this case, the Court is convinced that the articulated reason for the decision to discharge plaintiff is not a *legitimate* nondiscriminatory reason, but a pretext cooked up after the deed was done.

First of all, the great preponderance of the evidence supports the proposition that the plaintiff was doing his job to the discomfort of the contractors and city fathers. Indeed, he did not cooperate and go along with the bending of the rules. However, when overridden by his superiors, according to Mrs. Racht, he did not complain and insist upon his views, and there is no credible evidence to the contrary. The proof establishes that the plaintiff's criticism of Jones Brothers' excessive use of explosives did cause damage as illustrated by the damage to Mr. J. Howell Smith's home. The evidence also establishes that the improper storage of explosives was brought to the attention of Mr. Riley, job superintendent for Jones Brothers.

Secondly, when the plaintiff was discharged, an admittedly false reason, *i.e.*, "without cause" was furnished to the Tennessee Department of Employment Security. Regrettably, this plain misrepresentation was at the suggestion of the City's attorney. Lawyers have no business advising a client to misrepresent anything, even if the result intended in this case was to help the plaintiff to get his unemployment compensation benefits. Lawyers, if they are to be true to their calling, should not advise, urge or participate in misrepresentations.

Thirdly, in response to an EEOC inquiry, the City represented that the plaintiff was discharged "because the city manager did not desire his services any longer. He was an at will employee." This was closer to the truth to the extent that it represented that the City Manager no longer desired the plaintiff's services.

Finally, in defense of this action, the defendant attempts to justify its decision as a reasonable one based upon poor human relations.

The Court rejects the articulated reason as pure pretext. It represents the third stab at justifying its employment decision after first advancing a plain falsehood and then a partial truth. There is no credible and convincing evidence to support the reason advanced in defense of this action. The reason is simply not true, and it is not a *legitimate* reason.

The real reason for the plaintiff's discharge is that he was doing his job and was of an age and had the moral character to call the shots as he saw them and would not go along to get along. If he was overruled, that was someone else's decision, *i.e.*, his superiors, but he would not bend the rules. The plain truth is that the City Manager wanted to get someone else in the position—younger, less qualified and more malleable, so that there would be peace with the contractors.

To sustain the defendant's articulated reason as a *legitimate* reason would require the Court to accept and condone the conduct of city officials who were willing to breach their duty to serve the City's interest in good faith and to the best of their ability.

The Court is well aware that the "ADEA is not intended as a vehicle for general judicial review of business decisions." *Steckl v. Motorola, Inc.*, 703 F.2d 392, 394 (9th Cir.1983) (quoting *Douglas v. Anderson*, 656 F.2d 528 (9th Cir.1981)). However, in this action, the presumption arising from the establishment of a *prima facie* case stands unchallenged by an articulated *legitimate* nondiscriminatory reason. The reasons advanced is a pure pretext to justify getting the plaintiff out of the way. The Court concludes that the decision to terminate the plaintiff was an age-based decision.

The Court concludes that the plaintiff has carried his burden of persuasion as to his claim of age-based discrimination.

### IV.

The plaintiff shall be reinstated to his position with full payment of his back wages and restoration of the fringe benefits he would have been entitled to had he not been wrongfully discharged. The de-

fendant shall be entitled to credit for all amounts the plaintiff has received in unemployment compensation benefits, as well as the amounts plaintiff earned from other employment since his discharge. If the parties are unable to agree on these matters, they shall so report to the Court within thirty (30) days and this matter will be referred to the Magistrate to strike an accounting between the parties.

In the exercise of its discretion, the Court declines to take jurisdiction over the plaintiff's asserted pendent claim, and it will be dismissed without prejudice.

An appropriate order will be entered.