833 F.2d 1011
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Andrew CHEAIRS, Plaintiff-Appellant,
v.
WESTERN MENTAL HEALTH INSTITUTE and Tennessee Department of
Mental Health and Mental Retardation, Defendants-Appellees.
 No. 86-5893.
 United States Court of Appeals, Sixth Circuit.
 Nov. 24, 1987.
 
 Before NATHANIEL R. JONES, RALPH B. GUY and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Andrew Cheairs appeals a judgment entered, following a bench trial, dismissing his Title VII race and sex discrimination claims. We affirm.
 
 
 2
 Defendant-appellee Western Mental Health Institute ("Western") is a mental health hospital owned and operated by the State of Tennessee Department of Mental Health and Mental Retardation ("Department of Mental Health"). The appellant, Andrew Cheairs, a black male, began his employment with Western as a psychiatric trainee on April 12, 1965, when he was 19 years old. He was inducted into military service in January 1966 but, upon his discharge in 1968, was reinstated as a psychiatric trainee at Western.
 
 
 3
 In 1968, Cheairs enrolled in a vocational course of licensed practical nurse ("LPN") training. In September 1969, he received a permit to practice as an LPN until he passed his LPN examination. At that time he was appointed to the position of LPN at Western, however, after he failed his state LPN examination, he was demoted to the appropriate status for one having completed LPN training, but having not yet received a license. Upon successful completion of the test in June 1970, Cheairs was again promoted to LPN status at Western.
 
 
 4
 From the time of his initial employment until August 1980, Cheairs worked the third shift from 10:30 p.m. to 7:00 a.m. During his employment tenure with Western, Cheairs was subjected to various disciplinary actions and his annual performance evaluations ranged from "fair" to "average" to "met job requirements."
 
 
 5
 In a June 28, 1979, letter to James Lokey, Director of Examinations of the State Department of Personnel, Cheairs expressed his belief that he was being denied promotional opportunities on account of his race and sex. In this letter, however, Cheairs admitted that he had refused at least one offer of a promotion because of a shift change. Cheairs claims that shortly after he sent this letter retaliatory monitoring of his telephone calls began and disciplinary actions were taken against him which eventually led to his discharge.
 
 
 6
 On July 16, 1980, nursing supervisor and registered nurse Francis Johnson ("Johnson") found Cheairs outside his assigned area. Johnson issued Cheairs an oral warning for this infraction. On July 20, 1980, Cheairs was issued a written warning by Johnson for again being outside his assigned area on July 19, 1980.
 
 
 7
 On July 24, 1980, a conference took place in Johnson's office between Johnson and Cheairs. Johnson had asked Cheairs to her office so she could present him with the written warning and obtain his signature as required by Western policy. Cheairs indicated he would not sign the warning. A heated argument ensued with Johnson telling Cheairs she "would have his job" if he did not comply with the hospital's rules. Cheairs threatened Johnson with "taking this further" and accused her of violating the hospital's rules and discriminating in favor of white female employees.
 
 
 8
 Johnson wrote a letter to her superiors describing this meeting and accusing Cheairs of insubordination. Cheairs was suspended for three days based upon his verbal insubordination, failure to stay in an assigned area and his past problems with tardiness, time keeping and sleeping on duty. This suspension was reviewed and agreed to by several supervisors.
 
 
 9
 Upon his return to work, Cheairs was moved to the day shift for closer supervision. In addition to curbing the problems cited above, this was an attempt to curb his use of the telephone, which was not to be used by employees for personal calls. All calls had to go through a central switchboard and, because of the excessive use of the phone by Cheairs, the operators, on their own, began to keep records of his calls. This began as early as 1975 and records also showed monitoring from March 1980 to October 1980. In August 1980, Western administrators formally requested monitoring of Cheairs's calls. This was not unusual as from time to time administrators asked the operators to keep records of those suspected of excessive phone use.
 
 
 10
 Cheairs filed a grievance on September 3, 1980 regarding the July 24, 1980 incident with Johnson. His suspension was upheld and his appeal was not timely filed.
 
 
 11
 On October 21, 1980, Cheairs received another oral warning for tardiness. On October 28, 1980, when Western's administrators received Cheairs' phone records dating from the time he was placed on the day shift, a decision was made to fire him. The letter informing him of this decision stated that his termination was a result of "negligence in the performance of ... assigned duties" and "gross violation of Institute policy concerning the use of the telephone."
 
 
 12
 Cheairs was dismissed from his employment as an LPN at Western on October 29, 1980, effective November 8, 1980. On November 8, 1980, Cheairs filed a charge of race and sex discrimination with the Equal Employment Opportunity Commission ("EEOC").
 
 
 13
 On August 23, 1982, after receiving a "right to sue" letter from the EEOC, Cheairs filed a complaint in United States District Court for the Western District of Tennessee against Western and two individual defendants. Cheairs alleged race and sex discrimination in his disciplinary actions and termination pursuant to Title VII of the Civil Rights Acts of 1965, 42 U.S.C. Sec. 2000e-2(a) & (b) (1976) and 42 U.S.C. Sec. 1981 (1976). Upon the motion of the defendants, Cheairs' 42 U.S.C. Sec. 1981 claim was dismissed and his claims against the two individual defendants, James Brown, Commissioner of Department of Mental Health and William Jennings, Superintendent of Western, were also dismissed by court order.
 
 
 14
 A trial was held without a jury on April 7-8, 14-18, 1986. On July 15, 1986, the lower court dismissed Cheairs' claims and entered judgment in favor of Western. Cheairs then filed a timely notice of appeal.
 
 
 15
 This court has previously set out its standard of review in Title VII cases:
 
 
 16
 A decision by a district court on the issue of discrimination under Title VII is subject to review under the clearly erroneous standard of Rule 52(a), Fed.R.Civ.P. ... In Pullman-Standard v. Swint the Supreme Court made it clear that Rule 52(a) makes no distinction between so-called "ultimate" and "subsidiary" facts. A reviewing court is bound by all findings of facts in a case heard by a district court without a jury ... unless they are clearly erroneous.
 
 
 17
 Geisler v. Folsom, 735 F.2d 991, 994-95 (6th Cir.1984) (citations omitted).
 
 
 18
 Of course, this rule of review does not apply to a lower court's conclusions of law. If a lower court's findings rest on an erroneous view of the law, those findings may be set aside on that basis. Pullman-Standard v. Swint, 456 U.S. 273, 287 (1982). Thus, an appellate court's review of a lower court's legal conclusions is plenary.
 
 
 19
 Cheairs contends, on appeal, that the lower court was erroneous in its determination that Western did not discriminate against him in his discharge. Cheairs's contention is that after his confrontation with Johnson, all aspects of his employment were viewed differently and his misconduct with respect to matters that were considered "trivial" and "technical" prior to the confrontation was used to subject him to close monitoring and, eventually, termination.
 
 
 20
 Assuming Cheairs has stated a prima facie claim of retaliation under McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981), the burden shifts to Western to articulate a legitimate, non-discriminatory reason for dismissal. Western is held to a standard that requires it to produce at least enough evidence to dispel the inference of retaliation. The burden then shifts to Cheairs to show that the proffered reason is merely a pretext for discrimination. At all times, the ultimate burden of demonstrating unlawful retaliation remains with Cheairs. Burdine, 450 U.S. at 252-253; McDonnell-Douglas, 411 U.S. at 802-07.
 
 
 21
 In the lower court proceeding, Cheairs claimed he was discriminated against in his promotions, disciplinary actions and termination on the basis of his race and sex. The lower court looked at these events and concluded that all actions taken by Western were well documented and not based upon any type of discrimination. Thus, the lower court found that Western had articulated legitimate reasons for Cheairs' termination (continued abuse of the telephone and habitual tardiness). This determination is well documented by the record and is not an erroneous finding.
 
 
 22
 The analysis therefore shifts to whether Cheairs demonstrated that the above reasons were only pretextual. In attempting to so demonstrate, Cheairs claims that the determination that he was a "chronic discipline problem" who required greater supervision was made only after his confrontation with Johnson. He states such a determination is interesting in light of Johnson's testimony that his July 17 and 20, 1980 infractions were "trivial" and "merely technical." Cheairs also states that the behavior for which he was presumably fired was tolerated prior to his confrontation with Johnson and prior to his expression to her that he would take the matter further. If indeed he was the "worst" employee Western had, as Johnson and others have reported, Cheairs contends he should have been fired prior to 1980. All of this evidence, Cheairs contends, demonstrates a retaliatory motive on Western's behalf.
 
 
 23
 In weighing Cheairs's evidence that Western's reason for his discharge was pretextual, the lower court cited United States Postal Service Board of Governors v. Aikens, 460 U.S. 711 (1983), for the proposition that pretext can be established directly, comparatively or statistically. The district court found this burden was not met because there was no direct or reliable statistical evidence presented on behalf of Cheairs, and there was not another employee with a similar discipline record to compare with Cheairs's.
 
 
 24
 It is indeed hard to conclude that the district court's holding in this case is erroneous. After his confrontation with Johnson, Cheairs was suspended for three days for insubordinate behavior. Upon his return to Western, Cheairs was moved to another shift. Upon his move to that shift, he continued to be tardy for work and to abuse the telephone privileges granted to employees. Cheairs complained because his phone calls were monitored, but the evidence presented in the lower court showed that it was not unusual for Western to periodically monitor the phone use of employees who were suspected of abusing the telephone.
 
 
 25
 Western contends, and the lower court agreed, that it was Cheairs' continued misconduct that caused him to lose his job. Western cites this court's decision in Brown v. Ralston Purina Company, 557 F.2d 570, 572 (6th Cir.1977), for the proposition that just because an employee has a complaint regarding discrimination, he does not have the right to fail to perform work, miss work or leave work without notice and his employer is not precluded from firing him for those reasons. In a similar case, Davis v. State University of New York, 802 F.2d 638, 642 (2d Cir.1986), the Second Circuit Court of Appeals upheld the lower court's decision that an employee was not fired based upon her filing a claim with the EEOC, but, as supported by the record, was fired based upon her low work productivity, her inability to accept work supervision and the fact that she responded to conflict unsatisfactorily. The scenario of the above two cases seems to be the scenario in this case as well and thus, the lower court's determination as to Cheairs is appropriate.
 
 
 26
 Accordingly, the judgment of the district court is AFFIRMED.