NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0923n.06
Filed: December 21, 2006

No. 05-4646

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JULLIE QUINN-HUNT, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellant,* | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| BENNETT ENTERPRISES, INC., d/b/a | ) | **O P I N I O N** |
| HOLIDAY INN EXPRESS; MARY HELGE, | ) | |
| | ) | |
| *Defendants-Appellees.* | ) | |

BEFORE:    COLE, McKEAGUE, Circuit Judges; BREEN, District Judge.[*]

**R. GUY COLE, JR., Circuit Judge.**  Plaintiff-Appellant Jullie Quinn-Hunt appeals the

district court's order granting summary judgment to Defendants-Appellees Bennett Enterprises, Inc.

("Bennett"), and Mary Helge.  Quinn-Hunt, who is black, contends that Bennett (her former

employer) and Helge (her former supervisor at Bennett) terminated Quinn-Hunt's employment based

on her race in violation of 42 U.S.C. § 1981.  The district court held that she failed to establish a

prima facie case of employment discrimination, and, alternatively, she failed to establish that

Bennett's reasons for firing her were a pretext for discrimination.  Additionally, the district court

denied Quinn-Hunt's motion to compel certain discovery.  Quinn-Hunt contends the district court

_____

[*]The Honorable J. Daniel Breen, United States District Judge for the Western District of
Tennessee, sitting by designation.

erred in each of these conclusions.  We **AFFIRM**.


## I.  BACKGROUND

### A.  Facts

Bennett hired Quinn-Hunt as a night auditor for Bennett's Holiday Inn Express hotel in March 1996.  As a night auditor, she was responsible for guest registrations, balancing the day's transactions, responding to guest concerns, and helping prepare the morning continental breakfast.  Her hours were from 11:00 p.m. to 7:00 a.m.  She was the sole company employee on the premises from 11:00 p.m. to 6:00 a.m.

Ann Lawson, Assistant Manager, was Quinn-Hunt's immediate supervisor throughout her employment at the Holiday Inn Express.  Quinn-Hunt testified that she had no complaints about the way Ms. Lawson treated her.

In 1997, Appellee Mary Helge, General Manager of the Holiday Inn Express, promoted Quinn-Hunt to the position of manager-on-duty ("MOD") during the maternity leave of Lori Stickley.  As MOD, Quinn-Hunt was in charge of the hotel's second-shift operations. When Stickley returned from her maternity leave, Quinn-Hunt transferred back to her third-shift, night-auditor position, which she retained throughout the remainder of her employment with the company.

In 1999, Quinn-Hunt reduced her employment hours to four days per week for personal reasons.  Nonetheless, she told Helge that she was interested in filling a vacant MOD position. Helge eventually selected Jeanese Hawkins, who is black, for the position.

During her employment, Quinn-Hunt frequently arrived late, resulting in disciplinary

warnings on occasions when her actions were particularly flagrant. Quinn-Hunt admitted to these violations in her deposition. It is important for the front-desk clerk to arrive on time, especially for the third shift (11:00 p.m. to 7:00 a.m.), because there is no one else at the hotel to cover the front desk after 11:00 p.m. For example, on June 20, 1998, Quinn-Hunt did not report for work at 11:00 p.m. and could not be reached by telephone, causing Helge, the General Manager, to drive to the hotel at 12:15 a.m. to cover for her. Quinn-Hunt called in at 1:00 a.m., stating that she had overslept. Helge thereupon suspended Quinn-Hunt for three days, later noting in a written warning that "this is a chronic problem and failure to abide by the written schedule in the future will result in termination." (Joint Appendix ("JA") 393.)

Additionally, Quinn-Hunt was caught sleeping on the job twice, and once left her post to tend to personal business (unloading stacks of newspapers from her car). She received warnings for these incidents and admitted to them in her deposition.

In March 2000, Quinn-Hunt reported to work two hours late, and Helge fired her. Hawkins, the second-shift MOD, wrote a contemporaneous memorandum describing the evening's events, stating that she waited until 11:30 p.m. to attempt to locate Quinn-Hunt "because she usually runs late approx[imately] 10-15 min[utes]." (*Id.* 27.) Hawkins stated that her calls to Quinn-Hunt's home went unanswered, and she called Helge at midnight to advise that she could not stay through the entire third shift. Quinn-Hunt called in at approximately 12:25 a.m. and arrived at the hotel just before 1:00 a.m. The next morning, Helge terminated Quinn-Hunt's employment because of her "many infractions, including the 2-hour delay in reporting to work on 3/25/00." (*Id.* 399.)

After discharging Quinn-Hunt, Bennett learned that she had taken approximately 500

confidential documents from employment files and made copies for her own use.

## B. Procedural History

On April 13, 2001, Quinn-Hunt filed suit in state court alleging "race discrimination in employment." The case was removed to the United States District Court for the Northern District of Ohio. On February 22, 2002, the district court granted Quinn-Hunt's request for dismissal without prejudice. She then re-filed her case on March 15, 2002, and the Appellees again removed the case to district court. The Appellees moved for summary judgment, arguing that Quinn-Hunt's claim was not filed within ninety days of her receipt of her EEOC right-to-sue letter, that her misappropriation of confidential documents barred recovery, that she had not presented admissible evidence to support her claims, and that Mary Helge could not be held liable under Title VII. The district court granted summary judgment for the Appellees, holding that Quinn-Hunt's Title VII claim was untimely. *Quinn-Hunt v. Bennett Enters., Inc.,* No. 3:02cv7195, 2003 U.S. Dist. LEXIS 8096, at *3 (N.D. Ohio Apr. 9, 2003). The court also expressly declined to construe her complaint as stating a claim under 42 U.S.C. § 1981, which provides a federal remedy for race discrimination in private employment. *Id.* The court additionally held that her misappropriations of confidential documents barred her claim. *Id.* at *5. The court did not address Appellees' other grounds for summary judgment on the merits.

Quinn-Hunt appealed, and this Court reversed. *Quinn-Hunt v. Bennett Enters., Inc.,* 122 Fed. App'x 205 (6th Cir. 2005). We explained that the district court should have construed Quinn-Hunt's complaint as stating a claim under § 1981, for which the statute of limitations had not expired. *Id.*

at 207. Additionally, this Court held that Quinn-Hunt's claim was not barred even though she misappropriated the confidential documents. *Id.* at 208.

On remand, the Appellees again moved for summary judgment. Quinn-Hunt filed a motion to compel discovery, and, on September 7, 2005, the district court denied Quinn-Hunt's motion and granted the Appellees' motion for summary judgment. *Quinn-Hunt v. Bennett Enters., Inc.,* No. 3:02cv7195, 2005 U.S. Dist. LEXIS 19267 (N.D. Ohio Sept. 7, 2005) ("*Quinn-Hunt II*"). The district court addressed Quinn-Hunt's claim on the merits, holding that (1) Quinn-Hunt failed to establish a prima facie case of employment discrimination because she was not qualified for her position insofar as she did not meet her employer's legitimate expectations; and (2) even if she had established a prima facie case, she could not show that Bennett's legitimate reasons for terminating her were pretextual. *Id.* Quinn-Hunt filed a Rule 59(e) motion to vacate judgment, and the district court overruled it. This appeal followed.

## II. DISCUSSION

### A. Employment-Discrimination Claim Under 42 U.S.C. § 1981

1. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Although all "inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion," *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962), summary judgment must be entered against the opposing party if it "fails to make a

showing sufficient to establish the existence of an element essential to . . . [its] case, and on which . . . [it] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If "a reasonable jury could return a verdict for the nonmoving party," summary judgment must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This Court reviews de novo the grant of summary judgment. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc).

2. Merits

Section 1981 prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors. *Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006) (citing *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 867-68 (6th Cir. 2001)). The statute provides that all persons in the United States "shall have the same right . . . to make and enforce contracts . . . as shall be enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). The statute's protection extends to "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." *Amini*, 440 F.3d at 358 (citing 42 U.S.C. § 1981(b)).

To establish a claim for racial discrimination under § 1981, a plaintiff must show (1) she belongs to an identifiable class of persons who are subject to discrimination based on their race; (2) the defendant intended to discriminate against her on the basis of race; and (3) the defendant's discriminatory conduct abridged a right enumerated in § 1981(a). *Amini*, 40 F.3d at 358 (citing *Christian*, 252 F.3d at 871-72).

When a plaintiff seeks to prove intentional discrimination inferentially in a § 1981 case, federal courts follow the burden-shifting framework that the Supreme Court has prescribed for

analogous civil-rights cases described in *McDonnell Douglass Corp. v. Green*, 411 U.S. 792 (1973). *Id.*; *see also Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004) ("The elements of [a] prima facie case as well as the allocations of the burden of proof are the same for employment claims stemming from Title VII and § 1981."). Under that framework, the plaintiff bears the initial burden of establishing a prima facie case by a preponderance of the evidence. *Ang v. Proctor & Gamble Co.*, 932 F.2d 540, 548 (6th Cir. 1991). If the plaintiff successfully proves a prima facie case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employer's discharge." *Id.* (citation omitted). Once the employer carries this burden, the burden shifts back to the plaintiff to prove by a preponderance of the evidence "that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination." *Id.* (citation omitted).

As discussed below, Quinn-Hunt cannot establish a prima facie case. And even if she could meet this initial burden, she cannot establish that Bennett's articulated reasons for terminating her were a pretext for racial discrimination.

a. *Failure to Establish a Prima Facie Case*

To establish a prima facie case of employment discrimination, a plaintiff must show (1) she is a member of a protected class; (2) she was subject to an adverse employment action; (3) she was qualified for the particular position; and (4) the defendant either (a) replaced her with a person not a member of the protected class, or (b) treated similarly situated employees outside of the protected class more favorably. *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002). There is no dispute that Quinn-Hunt satisfies the first two elements of the prima facie case. At issue is the third element

(whether she was qualified) and the second part of the fourth element (whether Bennett treated similarly situated employees outside of the protected class more favorably.)

The district court held that Quinn-Hunt failed to establish a prima facie case because she was not qualified. The court correctly noted that an employee is not qualified for a post if the employee fails to meet the employer's legitimate expectations. *Quinn-Hunt II*, 2005 U.S. Dist. LEXIS 19267, at *4 (citing various cases, including *Ang*, 932 F.2d at 548). The court then noted that Quinn-Hunt was repeatedly late for work, was twice reprimanded for falling asleep on the job, and was caught leaving her work station to do personal business on company time. *Id.* Moreover, the court explained, "Quinn-Hunt admitted, during her deposition, to all the workplace infractions [that] Bennett cites as justifying her termination." *Id.* Accordingly, the court held that she failed to establish a prima facie case. *Id.*

Neither party addresses this portion of the district court's opinion, but the court's determination regarding whether Quinn-Hunt was qualified improperly considered the events that led to her termination. When assessing whether a plaintiff has met her employer's legitimate expectations at the prima facie stage of a termination case, "a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff." *Cline v. Catholic Diocesan Sch. of Toledo,* 206 F.3d 651, 660-61 (6th Cir. 1999). We have recently reaffirmed this rule. *See Tysinger v. Police Dep't of Zanesville*, 463 F.3d 569, 561 (6th Cir. 2006) ("For purposes of the prima facie analysis, a plaintiff's qualifications are to be assessed in terms of whether he or she was meeting the employer's expectations *prior to and independent of* the events that led to the adverse action.") (emphasis added) (citing *Cicero v. Borg-*

*Warner Auto., Inc.,* 280 F.3d 579, 585 (6th Cir. 2002)). Instead of considering a defendant's proffered justification and accompanying evidence when determining whether a plaintiff has presented sufficient evidence to prove that she was qualified, courts should consider that evidence at the second and third stages of the *McDonnell-Douglas* inquiry. *Cicero*, 280 F.3d at 588.

The district court relied on "all the workplace infractions [that] Bennett cites as justifying her termination," to determine that Quinn-Hunt failed to establish she was qualified. *Quinn-Hunt II*, 2005 U.S. Dist. LEXIS 19267, at \*5. This was improper. *See Cicero*, 280 F.3d at 587 (noting that district court improperly "analyzed the defendants' proffered evidence of [plaintiff's] poor performance as an element of the prima facie case, a fact shown by the district court's own language."). Bennett does not provide evidence independent of Quinn-Hunt's performance that indicates she was not qualified. The district court therefore erred in this regard.

This error is inconsequential, however, because Quinn-Hunt cannot establish the fourth element of a prima facie case; she cannot show that Bennett treated unprotected, similarly situated employees more favorably than her. To meet her burden, Quinn-Hunt must show that all of the relevant aspects of her employment situation were nearly identical to those of the non-protected employee's situation. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). Moreover, to be deemed "similarly situated," the individuals must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Mitchell v. Toledo Hosp.*, 964 F.2d 557, 583 (6th Cir. 1992). Quinn-Hunt contends that Bennett treated certain other employees more favorably than it treated her.

In each case, however, she fails to meet her burden.

Quinn-Hunt first refers to her affidavit in which she claims that her late arrivals to work were routinely recorded on MOD reports and transferred to disciplinary forms but that late arrivals by white employees were not. Quinn-Hunt's allegations are not supported, however, by the MOD reports attached to her affidavit. Only one report refers to her late arrival. In contrast, a number of MOD reports note late arrivals by white employees. Furthermore, Quinn-Hunt has admitted that she was late for work on at least ten occasions—and over one-hour late on five of these occasions—when Bennett took no disciplinary action against her. She therefore fails to establish that Bennett treated other employees more favorably than it treated her with respect to her late arrivals to work.

Quinn-Hunt next argues that Bennett treated the morning hostesses, Chris Helge and Rita Hamrick, more favorably than her. In support of her claim that these employees had worse attendance records than she did, Quinn-Hunt prepared lists in her affidavit of purported late arrivals, allegedly based on timecards going back to 1993, three years before she began employment with Bennett. Quinn-Hunt never produced the timecards, but argues that her affidavit puts these facts "properly into evidence." (Appellant's Br. 19.) The district court properly concluded, however, that her homemade lists are inadmissible hearsay. *Quinn-Hunt II*, 2005 U.S. Dist. LEXIS 19267, at *8 n.1 (citing Fed. R. Evid. 801(c)). Quinn-Hunt responds (in a separate assignment of error on appeal) that the district court should have considered the lists under Federal Rule of Evidence 1006, which allows charts or summaries "of voluminous writings . . . [that] cannot conveniently be examined in court" if they are "made available for examination or copying . . . ." (Appellant's Br. 27 (citing Fed.

R. Evid. 1006).) But the timecards in question are not so voluminous that they "cannot conveniently be examined in court." The district court therefore did not abuse its discretion[1] in ruling that these lists were inadmissible.

The only potentially admissible evidence of the morning hostesses' attendance records that Quinn-Hunt presented consisted of six Chris Helge timecards and seven Hamrick timecards, many of which contain Quinn-Hunt's own handwritten time entries, not timestamps. Even if these doctored copies were admissible, they do not prove that Chris Helge and Hamrick had worse punctuality than Quinn-Hunt. Indeed, Quinn-Hunt was *excessively* tardy by more than one hour on numerous occasions and admitted in her deposition that she could not name any other employee who called in as late as two hours, as she did on three separate occasions. Moreover, Quinn-Hunt had additional offenses, including multiple warnings for sleeping on the job, that distinguish her record from other employees. In short, Quinn-Hunt presented insufficient evidence that Chris Helge and Hamrick were similarly situated or had worse employment records than she did. Additionally, with regard to the alleged favoritism toward Chris Helge, Mary Helge's sister, nepotism and favoritism are not evidence of impermissible discrimination. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1096 (6th Cir. 1996).

Quinn-Hunt next argues that Bennett treated Terry Dusseau, the front-desk clerk, more favorably than Quinn-Hunt. Quinn-Hunt alleges that a hotel guest told her that Dusseau stole some cash in 1999 and was suspended for three days. This testimony is inadmissible hearsay. Fed. R.

---

[1]Rulings on the admissibility of evidence may not be disturbed on appeal in the absence of a showing of clear abuse of discretion. *Geisler v. Folsom*, 735 F.2d 991, 997 (6th Cir. 1984).

Evid. 801(c). It therefore cannot assist in making out a prima facie case.

The district court also noted that, even if this evidence were admissible, Quinn-Hunt's comparison to Dusseau is inappropriate because, "[t]hough one might assume that stealing would be treated more seriously than Quinn-Hunt's multiple infractions, [the court] cannot second guess an employer's business judgment." *Quinn-Hunt II*, 2005 U.S. Dist. LEXIS 19267, at *10 (citing *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004)). To be sure, an employer's business judgment is usually insulated when comparing similar *applicants* for a job, as in *Hedrick*. *See also Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Svs.*, 165 F.3d 1321, 1330 (10th Cir. 1999), *quoted in Hedrick*, 355 F.3d at 462 ("Our role is to prevent unlawful *hiring* practices, not to act as a 'super personnel department' that second guesses employers' business judgments.") (emphasis added). But when the employer's decision is to *fire* one employee and not others, the court has a responsibility to "second guess" the employer in light of evidence that a similarly situated employee committed similar (or worse) infractions but was retained. *See Clayton*, 281 F.3d at 611 (noting that the "ultimate question" under *McDonnell Douglas* is whether an allegation that "other employees involved in acts against [the employer] of comparable seriousness . . . were nevertheless retained . . . ."). Because this evidence is inadmissible, however, the district court's statements on this point do not affect the outcome.

Quinn-Hunt also compares herself to Lori Stickley, MOD for the hotel's second-shift operations. But Stickley is a supervisory employee, and Quinn-Hunt is not. Indeed, Stickley once issued a disciplinary warning to Quinn-Hunt for reporting to work over four hours late. This weighs against a finding that they are similarly situated. *See Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d

796, 802 (6th Cir. 1994) (holding that a supervisor was not similarly situated to a non-supervisor).

Additionally, Quinn-Hunt fails to show that Stickley committed transgressions of the same severity as Quinn-Hunt's.

In sum, Quinn-Hunt fails to establish that Bennett treated similarly situated employees more favorably than her. Accordingly, she fails to establish a prima facie case of employment discrimination.

b. *Failure to Establish Pretext*

Even if Quinn-Hunt had established a prima facie case, she fails to show that Bennett's proffered reason for terminating her (her various violations, including the multiple tardies) was a pretext for discrimination. A plaintiff can demonstrate pretext by showing that the proffered reason for termination (1) has no basis in fact; (2) did not actually motivate the defendant's conduct; or (3) was insufficient to warrant the challenged conduct. *Amini*, 440 F.3d at 360 (citing *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003)).

The first type of showing is easily recognizable and consists of evidence that the proffered bases for the plaintiff's discharge never happened, i.e., that they are "factually false." *Manzer v. Diamon Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). Quinn-Hunt does not argue that the reasons for her discharge are false, so this element is inapplicable.

Under the second showing, the plaintiff admits the factual basis underlying the employer's proffered explanation but attempts to show that an illegal motivation was more likely the reason for the termination. *Id.* Quinn-Hunt has presented no evidence of racial animus on the part of the Appellees, however. For example, she testified that nobody in management ever used a racial slur

or told a racial joke in her presence. Additionally, Mary Helge promoted Quinn-Hunt during Stickley's maternity leave and later promoted Jeanese Hawkins, who is also black, to the MOD position. Quinn-Hunt fails to make this second type of pretext showing.

The third showing ordinarily consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff. *Manzer*, 29 F.3d at 1084. As discussed above in the context of the prima facie case, Quinn-Hunt fails to show that other employees engaged in conduct substantially similar to hers but were not fired. She therefore fails to show that Bennett's reasons for terminating her employment were insufficient to motivate the termination.

In sum, Quinn-Hunt fails to show Bennett's articulated, legitimate reasons for terminating her were a pretext for race discrimination.

## B. Denial of Quinn-Hunt's Motion to Compel Discovery

Quinn-Hunt also argues that the district court improperly denied her motion to compel discovery. When reviewing a trial court's decision to limit discovery, this Court will intervene only upon a showing of an abuse of discretion resulting in substantial prejudice. *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 906 (6th Cir. 1991).

Quinn-Hunt filed a motion to compel discovery on May 11, 2005. In their response, filed May 20, 2005, the Appellees stated that they had produced all of the documents (except trial exhibits) Quinn-Hunt requested, and objected to her interrogatory requesting that the Appellees identify five white employees who were treated "more harshly and less leniently than plaintiff." But

the Appellees' pending summary-judgment motion did not claim that white employees were treated more harshly than Quinn-Hunt; accordingly, there was no basis to compel an answer. Therefore, the district court did not abuse its discretion in denying the motion to compel.

### III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's order granting Appellees' motion for summary judgment and denying Quinn-Hunt's motion to compel discovery.