**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0229n.06

Case No. 13-3984

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Mar 27, 2014

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| CARL RHOADES, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| STANDARD PARKING CORP., | ) | OHIO |
| | ) | |
| Defendant-Appellee. | ) | |

**BEFORE: GRIFFIN, WHITE, and STRANCH, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge**. Carl Rhoades appeals the district court's grant of summary judgment to his former employer, Defendant Standard Parking Corporation, in this wrongful termination action brought under the Age Discrimination in Employment Act (ADEA) and Ohio law. PID 5-6. We agree with the district court that Rhoades presented insufficient evidence of pretext to survive summary judgment, and AFFIRM.

**I.**

Standard Parking manages and maintains parking facilities for its clients, provides employees to operate those parking facilities, and performs services including bookkeeping. Standard Parking's Cleveland office hired Rhoades as a parking lot attendant in 2002, when he was 63 years old, and he worked at the Cleveland Clinic Foundation lot until he and approximately 175 other employees were laid off in May 2009 when Standard Parking lost its

service contract with the Cleveland Clinic Foundation. PID 96, 98-99, 170, 172-77, 197-98, 207, 416.

In March 2010, Standard Parking rehired Rhoades. One of Standard Parking's clients, the Playhouse Square Foundation, owns both the Hermit Club lot at which Rhoades worked and a nearby parking garage, the Playhouse Square Garage. PID 90-91. Standard Parking terminated Rhoades's employment on May 10, 2010, based on its determination that Rhoades violated company policy during an exchange between Rhoades and a Playhouse Square Foundation employee, and because the Playhouse Square Foundation executive responsible for managing the Standard Parking contract demanded that Rhoades be removed from the lot following that exchange. Rhoades filed a grievance pursuant to company procedures, which was denied. PID 15. He later filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC), which issued a right to sue letter in October 2011. PID 11, 13.

**A.**

Rhoades filed this age-discrimination action in December 2011.[1] PID 1. Following discovery, Standard Parking moved for summary judgment, arguing that Rhoades could not establish a prima facie case of age discrimination and, assuming he could, the incontrovertible evidence demonstrated that it terminated Rhoades's employment for two legitimate, non-discriminatory reasons—because his conduct on May 7, 2010 violated the company's customer service policy and because the Playhouse Square Foundation executive responsible for managing the Standard Parking contract demanded Rhoades be removed from the Hermit Club lot as a result of the May 7th incident. PID 73-83.

---

[1] Although Rhoades's complaint alleged that his layoff in 2009 was discriminatory in that Standard Parking "retained several significantly younger, similarly-situated employees due to their age," PID 2, he has abandoned that claim on appeal.

## II. Pretext

Because Standard Parking does not dispute for purposes of this appeal that Rhoades established a prima facie case of age discrimination and Rhoades does not dispute that Standard Parking's proffered reasons for terminating his employment are legitimate and non-discriminatory, we address only the issue of pretext. *See* Standard Parking Br. at 18, Rhoades Br. at 14.

We review the district court's grant of summary judgment de novo, viewing the facts and inferences therefrom in the light most favorable to the nonmoving party. *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 346 (6th Cir. 2012). To demonstrate pretext at the summary judgment stage, the plaintiff must show by a preponderance of the evidence either 1) that the employer's proffered reasons for the adverse employment action had no basis in fact, 2) that the proffered reasons were not the true reason, or (3) that they were insufficient to motivate discharge. *See, e.g., Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003); *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), abrogated on other grounds by *Gross v. FBL Fin. Servs.*, 557 U.S. 167 (2009), as recognized in *Geiger v. Tower Auto.*, 579 F.3d 614, 621 (6th Cir. 2009).

Rhoades maintains that he presented sufficient evidence of pretext to survive summary judgment under either the first or third prong of the pretext test.

### A. Whether Standard Parking's proffered reasons for terminating Rhoades's employment had a basis in fact

"The first type of showing [of pretext] is easily recognizable and consists of evidence that the proffered bases for the plaintiff's discharge never happened, i.e., that they are factually false." *Manzer*, 29 F.3d at 1084 (emphasis and internal quotation marks omitted).

Standard Parking's customer service policy is set forth in its Employee Handbook:

Your conduct, reflecting the guidelines below, is the most visible and important measure that the public has in evaluating our performance. Your attention to each point is, therefore, extremely important. Violations of these guidelines may result in disciplinary action up to and including discharge.

. . . .

Customers expect and deserve to be treated with respect at all times. Courteous conduct with customers is essential. **Under no circumstances are you permitted to argue with a customer, even if you know you are correct.** Use of profanity to a customer is strictly forbidden. **Regardless of the circumstances, any lack of courtesy on your part may result in discharge**.

. . . .

Examples of offenses that warrant disciplinary action up to and including immediate suspension and/or discharge include, but are not limited to the following:

. . . .

Being discourteous to customers, swearing or use of abusive or obscene language with, or within proximity of customers.

PID 135, 139, 145/2007 Employee Handbook for Hourly Employees (emphasis added). Rhoades acknowledged on deposition that he knew "from day one" of his employment that Standard Parking's policy was that an employee's lack of courtesy to a customer could result in discharge. PID 576.

Appended to Rhoades's complaint was the sworn affidavit of Madora Funderburk, a Standard Parking auditor/bookkeeper who witnessed the exchange that led to Rhoades's discharge. Funderburk's affidavit stated that she had supervised Rhoades for years, that he was always a good employee and never had trouble with customers or co-workers, and that she often received good reports from customers about Rhoades's excellent customer service. PID 16. Funderburk's affidavit summarized the May 7, 2010 incident at the Hermit Club lot:

4

> On May 7, 2010, Carl [Rhoades] and I were each responsible for one-half of the parking lot at 1600 Chester Avenue. At around 9:30-10:00 AM, the customer who complained about Carl, a monthly fee customer, pulled into my half of the lot. When he pulled in, I told him the lot was full and asked if he would use the neighboring garage that is also owned by Standard Parking. This is a standard practice when the parking lot was full. The customer then told me that the garage was full.

> So, I asked Carl [Rhoades] to radio Cheryl Yarlettes [sic], another Standard Parking employee, who worked at the parking garage. He did and Cheryl said that the garage was not full. The customer said he would go to the garage and began pulling out of the lot. At that time, Carl noticed a second customer leaving the lot. So, Carl began driving another vehicle in to the newly vacant parking space. When the first customer saw the open space, he immediately pulled his car into it, even though he knew that Carl was in the process of parking another car into that same space.

> Carl got out of his car and told the customer that he was trying to park the car in to that space. The customer refused to move and said, "I am a monthly parker and I paid for parking." Carl said, "OK. I'll remember that." The customer replied, "You do that." I was standing right there and there was no profanity or raised voices used by either Carl or the customer. I apologized to the customer and he said "That's OK, no problem." That was the end of the incident.

PID 16-17.

Rhoades's testimony on deposition was in accord with Funderburk's account. He testified that the Hermit Club lot was full to capacity on May 7, 2010, with cars double-parked. Rhoades testified that Brian Hrivnak pulled into the vacated space before Rhoades could, disregarding Rhoades's taps on the horn. PID 238, 311, 327-30. Rhoades and Funderburk then approached Hrivnak and asked him to park in the Playhouse Square Garage. Hrivnak said "no," and "I pay to park in this lot." Rhoades explained that Hrivnak needed to move his car, just for that day, because too many cars were double parked. Hrivnak refused. At that point, Rhoades said to Hrivnak, "I'll remember that." PID 242, 573-74, 327-30.

Hrivnak testified on deposition that when he pulled into the Hermit Club lot and parked, Rhoades told him he could not park there and to park in the nearby garage, that they "had a few words," that Rhoades swore at him, slammed his hand on Hrivnak's car, and said to Hrivnak,

"I'll remember that." Hrivnak responded by saying "you do that." PID 291. Hrivnak testified that he felt threatened by Rhoades, PID 277-78, 288-89, 291, and that he walked over to the office of John Hemsath, Director of Theater Operations for the Playhouse Square Foundation and Standard Parking's primary contact there. Hemsath was not there, but about an hour later Hrivnak and Hemsath walked over to the garage to talk to Standard Parking's Facility Manager Cheryl Yarletts about the exchange. PID 289-90, 433. Hrivnak testified that Hemsath told Yarletts that he (Hemsath) wanted Rhoades "out of there." PID 292.

Yarletts, Rhoades's direct supervisor, testified that Hemsath and Hrivnak lodged a complaint with her on the afternoon of May 7, 2010. Yarletts testified that Hrivnak "said that Carl [Rhoades] had argued with him, swore at him. And then John [Hemsath] stated he did not want Carl there – to work there anymore. And I said I would take care of it." PID 264-65. Yarletts testified "If a client doesn't want an employee, I mean I can't keep him there." PID 267. Yarletts testified that she relayed the complaint to Standard Parking's Senior Manager, Matthew Neuman. PID 271, 432.

Neuman testified on deposition that Facility Manager Yarletts called him on the day in question and reported that John Hemsath and Brian Hrivnak had complained to her regarding "an altercation between Brian and Carl on the Hermit Club Lot." PID 432. Yarletts told Neuman that Hemsath and Hrivnak "were very angry, very upset." PID 432. Neuman testified that he called Hemsath soon after and asked him to explain what happened. Hemsath said "that there was a dispute over a parking space and that Carl put his hand on Brian's car, was very loud and aggressive, used quite a bit of profanity and was very threatening in nature, and this was not the first incident or report they've had regarding Carl at the Hermit Club Lot and he wanted him gone immediately." PID 435. Neuman testified that "he's our client and we have a valuable

contract with them [the Playhouse Square Foundation] and we have no reason to doubt what the client tells us." PID 436. After conferring with corporate headquarters in Chicago, Neuman terminated Rhoades's employment on May 10, 2010. PID 438. Neuman testified that he did not speak directly to Madora Funderburk about the incident, but that Yarletts did on several occasions. PID 439-40. When asked why Rhoades "was terminated as opposed to being moved to another lot," Neuman responded:

> Based on the aggressiveness, the vulgarity and the placing the hands on the car, basically just based on the severity of his outburst and approach to the customer of a threatening nature, me and [Chicago Human Resources] agreed that a termination was warranted . . ." PID 441.

When asked why he did not get Rhoades's side of the story before terminating his employment, Neuman responded:

> His side of the story is really not relevant. If the client says that . . . one of our employees treated a customer poorly, then we're gonna act on it. We're in the customer service business.

PID 444, 447.

## 1.

Rhoades argues that he and Funderburk, two of the three witnesses to the exchange at issue, testified that Rhoades's conduct did not violate company policy and that this alone demonstrates the existence of a genuine issue of material fact that Rhoades did not argue with Hrivnak, was not discourteous, and did not violate company policy. Rhoades Br. at 20. Rhoades's version of the facts is that he politely tapped on the horn several times to get Hrivnak's attention before Hrivnak pulled his car into the open parking space; that once Hrivnak pulled in, Rhoades approached Hrivnak and nicely asked him three times to park in the garage;

that Hrivnak refused and that Rhoades then said to Hrivnak, quietly and dejectedly, "I'll remember that." *See* Pl.'s Br. at 16-19.

>We agree with the following observations of the district court:

>The employee handbook, which Plaintiff readily admits receiving, states that employees are not permitted to argue with customers and any lack of courtesy may result in discharge. . . . In addition to honking his horn at him, Plaintiff's deposition shows he asked Hrivnak to move three times, each one followed by a "no." (Rhoades Dep. at 120). Regardless of whether there was any yelling, swearing, or slapping the hood of a customer's car, there is enough other evidence to show that Plaintiff violated the company policy of being courteous and refraining from arguing with a customer. Defendant's decision was based on facts.

PID 641. The district court properly concluded that Standard Parking's proffered reasons for discharging him had a basis in fact.

## B. Whether Standard Parking's proffered reasons for terminating Rhoades's employment were sufficient to warrant his termination

Rhoades also argues that he presented sufficient evidence of pretext to survive summary judgment under the third prong of the pretext test, i.e., that Standard Parking's proffered reasons for discharging him were insufficient to motivate the discharge.

To establish the insufficiency of Standard Parking's proffered reasons, Rhoades is required to show by a preponderance of the evidence that "other employees, particularly employees not in the protected class, were not fired even though they were engaged in substantially identical conduct to that which the employer contends motivated its discharge of [Rhoades]." *Manzer*, 29 F.3d at 1084.

The district court concluded that Rhoades did not make the required showing, in part because none of the comparable employees Rhoades pointed to had been the subject of a client's demand for discharge:

> While Plaintiff points to other employees who violated various policies of Standard Parking, including being argumentative with customers, none of those involved an apparent client demand for the removal of that employee. *See* Funderburk Aff. ¶ 7 and 20. While there is no direct testimony from Hemsath, the client's liaison who allegedly demanded Plaintiff's removal, there is plenty of evidence to support the notion that multiple people involved in the decision to terminate Rhoades were under the impression that a client had demanded the removal of Plaintiff. *See* Hrivnak Dep. 68-69, 74-76; Radovan [Yarletts] Dep. 41. "As long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that reason was pretextual simply because it is ultimately shown to be incorrect."

PID 641–42.

### 1.

Rhoades argues that since Standard Parking offered only the testimony of its employees to prove that Hemsath demanded Rhoades's discharge, that testimony is inadmissible hearsay and there thus was a genuine issue of material fact as to whether any Standard Parking client demanded Rhoades's termination. Rhoades Br. at 21-22.

A court cannot rely on unsworn inadmissible hearsay when ruling on a motion for summary judgment. *Hoover v. Walsh*, 682 F.3d 481, 491 n.34 (6th Cir. 2012). But, as the district court found in the instant case, Standard Parking did not offer Hemsath's demand that he wanted Rhoades gone immediately for its truth, but rather, to show that several Standard Parking managers involved in the decision to discharge Rhoades were under the impression that Hemsath demanded Rhoades's discharge. PID 641. A statement that is not offered to prove the truth of the matter asserted but offered to show its effect on the listener is not hearsay. *See Biegas v.*

*Quickway Carriers, Inc.*, 573 F.3d 365, 379 (6th Cir. 2009). All but one of the cases Rhoades relies on are distinguishable, since they involve statements offered for the truth of the matter asserted. *See e.g., Owhor v. St. John Health-Providence Hosp.*, 503 F. App'x 307, 313 (6th Cir. 2012) (out of court third-party statement constituted inadmissible hearsay because it was offered to prove the truth of the matter asserted; that the defendant defamed the plaintiff); *Ford v. Securitas Sec. Servs. USA, Inc.*, 338 F. App'x 483, 487—88 (6th Cir. 2009) (district court improperly accepted Lawson's statement, offered through Durkee's testimony, for its truth); *Quinn-Hunt v. Bennett Enters., Inc.*, 211 F. App'x 452, 458 (6th Cir. 2006) (the plaintiff's allegation that a hotel guest told her that another employee stole cash from their employer and was suspended is inadmissible hearsay, as it was offered for its truth). At argument Rhoades also relied on *Shazor v. Professional Transit Management, Ltd.*, __ F.3d __, No. 13-3253, 2014 WL 627406 (Feb. 19, 2014) (reversing grant of summary judgment to the defendant employer on the basis that there was a material issue of fact whether the employer's proffered reason for the plaintiff's discharge, that she lied to Board members, was pretextual). But *Shazor* also involved statements offered for their truth and is thus inapposite. 2014 WL 627406, at *10.[2]

In the lone case Rhoades cites that did not involve a statement offered for its truth, *Michigan First Credit Union v. Cumis Insurance Socitey, Inc.*, 641 F.3d 240 (6th Cir. 2011), this

---

[2] Rhoades also relies on *Shazor* as supporting his argument that Standard Parking insufficiently investigated his purported misconduct. The employer in *Shazor* investigated the plaintiff's purported misconduct by speaking to one person. This court held that one conversation did not establish sufficient particularized facts about the truth behind the plaintiff's statements and thus the defendants failed to establish a foundation for the honest belief doctrine to apply. *Id.* at *11. *Shazor* is clearly distinguishable from the instant case. Here, Rhoades's direct supervisor, Cheryl Yarletts, testified that Hemsath and Hrivnak met with her and complained that Rhoades had argued and sworn at Hrivnak. Yarletts testified that at that meeting, Hemsath stated to her that he did not want Rhoades to work there anymore. Senior Manager Neuman testified that after hearing Yarletts' account, he called Hemsath to hear Hemsath's complaint and that Hemsath told him he wanted Rhoades gone immediately.

court held that a command did not constitute hearsay: "the challenged statement was made by Yarber, who testified that Lewis instructed him to remove a particular indirect loan from the "exceptions" section of his October 2003 audit report. This statement is not hearsay because it is a command, a verbal act without truth value." 641 F.3d at 251. We fail to see how this case benefits Rhoades. In fact, it helps demonstrate that the statement was also admissible to show that the request occurred. *See United States v. Rodriguez-Lopez*, 565 F.3d 312, 314 (6th Cir. 2004). The issue here is whether Hemsath demanded that Rhoades be discharged. Various persons testified that he did and Rhoades presented no evidence to the contrary.

## 2.

In support of his argument that the proffered reasons for discharge were insufficient, Rhoades also contends that the district court erred by applying the honest belief rule to the third pretext prong.[3] This argument is unavailing.

> The "honest belief" rule, as it is called, comes in at the pretext stage and places an additional evidentiary burden on Plaintiffs. *See, e.g., Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001). This circuit follows a modified form of the rule, asking whether the defendant "made a reasonably informed and considered decision before taking an adverse ... action." *Smith v. Chrysler*, 155 F.3d 799, 807 (6th Cir. 1998). Where the defendant "'made an error too obvious to be unintentional,'" a fact-finder may infer that "'it had an unlawful motive for doing so.'" *Id.* (quoting *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996)).

*A.C. ex rel. J.C. v. Shelby County Bd. of Educ.*, 711 F.3d 687, 705 (6th Cir. 2013).

Rhoades cites an unpublished district court opinion, *Gurne v. Mich. Bell Tel. Co.*, No. 10-14666, 2011 WL 5553817 (E.D. Mich. Nov. 15, 2011), for its interpretation of a footnote in *Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783, 794 n.5 (6th Cir. 2006), as precluding

---

[3] Rhoades did not waive or forfeit this argument because the issue did not arise until the district issued its opinion. Standard Parking did not argue below that the honest belief rule applied to the third prong, nor did the district court discuss this issue before issuing its decision.

an employer from invoking the honest belief rule when an employee seeks to establish pretext other than under the first pretext prong:

> If the plaintiff uses the first method [of establishing pretext], which "is essentially an attack on the credibility of the employer's proffered reason," the "honest belief" rule may be invoked. [*Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783,] 791. It may not be invoked if plaintiff uses the other two methods. *Id.* at 794, n.5.

The footnote in *Joostberns* stated "[t]he honest belief rule would not prevent Plaintiff from establishing pretext through methods other than the falsity of the reason offered."

Assuming that the scant nonbinding authority Rhoades relies on is correct, any error was harmless, because the district court correctly determined that Rhoades failed to show by a preponderance of the evidence that other employees were not discharged even though they engaged in substantially identical conduct to his. *See Manzer*, 29 F.3d at 1084. Excluding the honest belief rule from use in the third prong would only matter if Hemsath's statement was inadmissible hearsay. It is not. The statement is admissible as evidence of the request and the request differentiates Rhoades's circumstances from other employees' circumstances.

None of the three younger employees Rhoades points to, Mitri Ndoni, Rube Richards, and Latasha Jones, were the subject of a client complaint **and** a client's demand that he or she be removed.

Moreover, Ndoni and Richards were 65 years old and 68 years old at the time Rhoades was discharged at age 71 in May 2010, and thus were in the same protected class as Rhoades. This court has held that "in the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less between an employee and a replacement is not significant." *Grosjean v. First Energy Corp.*, 349 F.3d 332, 340 (6th Cir. 2003). Rhoades presented no direct evidence that Standard Parking considered age to be significant.

In any event, even if Ndoni yelled at a customer and was not discharged, but rather, was transferred to a different parking lot, Ndoni, unlike Rhoades who was an at-will employee, was a member of the Teamsters' Union and subject to a grievance procedure that requires a showing of just cause to support termination. PID 621. Matthew Neuman's affidavit submitted below stated regarding Latasha Jones that, to his knowledge, Standard Parking never concluded that she was guilty of theft, and regarding Rube Richards that no client demanded that Richards be removed from any lot he worked for Standard Parking. PID 621. Rhoades presented no contrary evidence, and thus failed to demonstrate that younger employees were not fired even though they engaged in substantially identical conduct to his.

For these reasons, we agree with the district court that Rhoades did not present sufficient evidence of pretext to survive summary judgment, and AFFIRM the grant of summary judgment to Standard Parking.